Edward M. STAFFORD and Peggie Ann Stafford, Plaintiffs-Appellants,

v.

INTERNATIONAL HARVESTER COMPANY and Eastco Truck Sales, Inc., Defendants-Appellees.

No. 92, Docket 81–7198.

United States Court of Appeals, Second Circuit.

Argued Sept. 16, 1981.

Decided Dec. 31, 1981.

Henry R. Simon, New York City (Meryl Shapiro, New York City, of counsel), for plaintiffs-appellants Stafford.

John A. Schultz, New York City (MacCarthy, Schultz & Mulholland, Ellin Mulholland and David B. Hamm, New York City, of counsel), for defendant-appellee International Harvester Co.

Arthur N. Seiff, New York City (Corcoran, Amabile & Cowin, Charles F. McGuire, Brooklyn, N. Y., of counsel), for defendant-appellee Eastco Truck Sales, Inc.

Before OAKES and MESKILL, Circuit Judges, and BLUMENFELD,* District Judge.

BLUMENFELD, District Judge:

This case involves an action by appellant Edward M. Stafford for damages resulting from injuries to person and property sustained in an accident caused by an alleged defect in a tractor truck manufactured by the appellee International Harvester Company (International Harvester) and repaired by the appellee Eastco Truck Sales, Inc. (Eastco). Appellant Peggie Ann Stafford, the wife of Edward Stafford, seeks damages for the loss of the services of her husband. The action is based on theories of negligence, breach of implied and express warranties and strict liability. Appellants are residents of New Jersey, appellee International Harvester is a Delaware corporation not having its principal place of business in New York and appellee Eastco is a New York corporation with its principal place of business in New York. Federal jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332.

On August 15, 1974, Edward Stafford purchased secondhand a tractor truck manufactured by International Harvester. The appellants allege that this truck was under recall by the manufacturer because of a possible defect in the steering mechanism. On or about November 5, 1974, while the appellant was operating the truck in New York, the steering mechanism failed causing a collision. The truck was subsequently towed to Eastco's place of business and repaired. Eastco is alleged to be a franchisee of International Harvester and to have known that the truck was under recall at the time it replaced the steering mechanism. On December 16, 1974, the steering mechanism again failed causing an accident in Pennsylvania in which the appellant sustained severe and permanent personal injuries. This second accident is the basis of this litigation.

The district court dismissed the appellants' complaint against Eastco insofar as it was grounded on breach of warranty and strict liability because it found that the transaction between Eastco and the appellant was predominately a service contract for repairs and not a sale of goods. Judge Mishler concluded that under the laws of both New York and Pennsylvania a transac-

---

* Hon. M. Joseph Blumenfeld, Senior United States District Judge for the District of Connecticut, sitting by designation.

tion cannot be the basis of a warranty or strict liability cause of action where services predominate and the sale of goods is only incidental to the repair or other service.

The district court also granted both defendants' motions for summary judgment on the ground that the lawsuit was untimely, having been commenced more than two years after the accident occurred in Pennsylvania. The court concluded that a two-year limitations period, relating to actions for injury to persons or property in Pennsylvania, Act of 1895, June 24, P.L. 236, § 2 and Act of 1713, March 27, 1 Sm.L. 76, § 1, 42 Pa.Cons.Stat.Ann. § 5524, was applicable to this cause of action rather than the three-year period which would apply under the law of New York, N.Y.C.P.L.R. § 214(4), (5).

The Pennsylvania statute of limitations was applied because the New York "borrowing statute" provides that if a cause of action accrues outside New York in favor of a non-resident, a New York court will apply the statute of limitations of the state where the cause of action accrued if to do so would bar the action. N.Y.C.P.L.R. § 202.[1] Judge Mishler concluded that the cause of action accrued in Pennsylvania because, for purposes of the borrowing statute, a "place of injury" test should determine where the cause of action accrued. He rejected the appellants' argument that the modern line of New York cases, applying a "center of gravity" approach to determine what substantive law applies in a choice of law situation, should be applied to determine where a cause of action accrues for purposes of New York's borrowing statute. Since the Pennsylvania limitations period was shorter than the New York period and would bar the actions, Judge Mishler held that it governed under the borrowing statute and barred all of the appellants' causes of action.

Judge Mishler also concluded that Pennsylvania's tolling statute was of no benefit to the appellants because, at the time this action came into being, neither defendant was subject to the tolling provision. In pertinent part Pennsylvania's tolling statute reads:

the defendant ... who shall have become non-resident of the state after said cause of action shall have arisen, shall not have the benefit of any statute of this state for the limitations of actions during the period of such residence without the state.

12 Pa.Cons.Stat.Ann. § 40, 1895, May 22, P.L. 112, § 1 (Repealed 1978, April 28, P.L. 202, No. 53, § 2(a), effective June 27, 1978). Since it is conceded by all parties that the appellee Eastco never was a resident of Pennsylvania, the district court concluded that the statute was not tolled as to Eastco.[2] The court also concluded that the limitations period was not tolled as to International Harvester because it has always been subject to the jurisdiction of Pennsylvania and therefore never became a non-resident within the meaning of that statute.

The appellants seek reversal of the judgment below on two grounds. First, they argue that the district court erred in dismissing their warranty and strict liability

**1.** New York's borrowing statute, N.Y. C.P.L.R. § 202, provides:

An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

The inapplicability of the borrowing statute to a suit by a citizen of the forum state has been held not to violate the privileges and immunities clause of Art. IV, Section 2 of the Constitution. *Canadian Northern Railway Co. v. Eg-*

*gen*, 252 U.S. 553, 40 S.Ct. 402, 64 L.Ed. 713 (1920).

**2.** The tolling statute in effect in Pennsylvania at the time this action came into being, Act of May 22, 1895, P.L. 112, § 1, 12 Pa.C.S.A. § 40 (repealed 1978), has been construed to suspend the running of the limitations period only against a defendant who, having been a resident of Pennsylvania, leaves the jurisdiction after a cause of action has accrued against him. *Hartmann v. Time, Inc.*, 64 F.Supp. 671, 675 (D.Pa.1946), *vacated in part & set aside on other grounds*, 166 F.2d 127 (3d Cir. 1947), *cert. denied*, 334 U.S. 838, 68 S.Ct. 1495, 92 L.Ed. 1763 (1948); *Hunter v. Bremer*, 256 Pa. 257, 100 A. 809, 812 (1917).

actions against Eastco because its finding that the transaction between the appellant and Eastco was predominately a service contract was contrary to the facts and proofs in the record. Second, they contend that the district court erred in holding that New York's borrowing statute required the application of Pennsylvania's two-year statute of limitations, therefore barring plaintiffs' claims. Their principal contention is that the court below should have followed the holding of *Martin v. Julius Dierck Equipment Co.*, 52 App.Div.2d 463, 384 N.Y. S.2d 479 (2d Dept. 1976), *aff'd on other grounds*, 43 N.Y.2d 583, 403 N.Y.S.2d 185, 374 N.E.2d 97 (1978), which applied the "grouping of contacts" or "center of gravity" approach governing substantive choice of law questions to determine where a cause of action accrues for purposes of the borrowing statute. This approach would require the district court to conclude that the action accrued in New York because, in appellants' view, New York has the most significant interest in and contact with the subject matter of this litigation. Appellants argue that since the action accrued in New York the borrowing statute did not apply and New York's three-year limitations period would govern these actions.

## I. *Dismissal of the Warranty and Strict Liability Actions Against Eastco*

The appellants argue that the court below erred in dismissing the warranty and strict liability actions against Eastco on the grounds that the transaction with Eastco was predominately a service contract, not a sale of goods such as is required to sustain such an action. They contend that the district court erred in its finding of fact concerning the character of the transaction, not that the court made any mistake in the legal standards it applied.

The court below clearly applied the proper rules of law in its analysis of the warranty and strict liability actions against Eastco. Judge Mishler held that both New York and Pennsylvania will not sustain a claim founded in implied warranty or strict liability if the transaction was predominately a service contract with only an incidental transfer of goods.

The law of New York on the question of whether a strict products liability action can be sustained in the case of a hybrid sales and service contract is well established. The leading case of *Perlmutter v. Beth David Hospital*, 308 N.Y. 100, 123 N.E.2d 792 (1954), established the principle that strict liability actions cannot be maintained where the transaction is predominately a service contract despite the existence of elements of a sale. *Id.* The appellants argue that the *Perlmutter* rationale is limited to the facts of that case which involved the sale of blood as part of the provision of health services by a hospital. However, *Perlmutter* has been extended by the New York courts to all transactions where service predominates. *See Milau Associates v. North Ave. Development Corp.*, 42 N.Y.2d 482, 398 N.Y.S.2d 882, 368 N.E.2d 1247 (1977). Although "[i]n a proper case, a hybrid service-sale transaction can give rise to a cause of action for breach of warranty or strict products liability if the sales aspect of the transaction predominates and the service aspect is merely incidental," *Nickel v. Hyster Company*, 97 Misc.2d 770, 773, 412 N.Y.S.2d 273, 276 (Sup.Ct., Suffolk Co. 1978), such a result has only been seen in cases where a retail seller provided some incidental services in connection with the sale, *Jackson v. Melvey*, 56 A.D.2d 836, 392 N.Y.S.2d 312, 314 (2d Dept. 1977). Judicial consideration of this issue has been analyzed in the same manner in Pennsylvania. *See Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893, 898 ·(1975) (doctrine of strict liability applies only to *sellers* of defective products); *DeMatteo v. White*, 233 Pa.Super. 339, 336 A.2d 355, 358 (1975) (contract for construction of home does not constitute a sale of goods despite incidental furnishing of materials); *York Heating & Ventilating Co. v. Flannery*, 87 Pa.Super. 19 (1926).

In the instant case, the district court found "the contract for the repair of the truck to be a service contract despite the incidental transfer of property used in rendering the service." The appellants con-

tend that this finding is in error because the facts and proofs set forth in the record establish that the transaction was predominately a sales contract. They cite three factors to support their position that the contract between Edward Stafford and Eastco was predominately one for the sale of goods: (1) the charge for labor was less than the charge for parts; (2) the purpose of the transaction was to replace the steering mechanism under the recall program instituted by the manufacturer; and (3) Eastco had the status of a franchisee of the manufacturer and was acting as the manufacturer's agent when installing the new steering mechanism.

■ This court, in reviewing a finding of fact made by the court below, is bound by the rule that "[f]indings of fact shall not be set aside unless clearly erroneous." Fed.R. Civ.P. 52(a). The burden is upon the appellants to demonstrate that the district court's finding is clearly wrong. *Zovluck v. United States*, 448 F.2d 339 (2d Cir. 1971), *cert. denied*, 405 U.S. 1043, 92 S.Ct. 1327, 31 L.Ed.2d 585 (1972).

■ The district court's finding that the transaction between Edward Stafford and Eastco was predominately a service contract is amply supported by the evidence in the record. Mr. Stafford himself described his arrangement with Eastco as having the purpose of repairing the truck. At the time he arranged to have the truck towed to Eastco he had no knowledge that the steering mechanism may have been under recall by International Harvester, the manufacturer, and, therefore, could not have gone to Eastco with the purpose of having the recall replacement made by an agent of the manufacturer. As explained by the New York Court of Appeals, the underlying nature of a hybrid transaction is determined by reference to the purpose with which the customer contracted with the defendant:

> Viewed in its entirety, we held in *Perlmutter* that the transaction could not be characterized in part or in its underlying nature as one for the sale of goods, for Mrs. Perlmutter had checked into the

hospital to restore her health, not to purchase blood.

*Milau Associates v. North Ave. Development Corp.*, 398 N.Y.S.2d 882, 368 N.E.2d at 1249. In this case Mr. Stafford had his truck towed to Eastco in order to repair the damage caused by the accident which occurred on November 5, 1974 in New York. The underlying nature of the transaction was therefore that of a contract for repairs and no error can be found in the district court's finding to that effect.

The dismissal of the appellants' warranty and strict liability causes of action against Eastco is therefore affirmed.

II. *The Statute of Limitations Issue*

■ Since jurisdiction in the court below was based on diversity of citizenship, it was bound to apply the substantive law of New York, *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), including the applicable New York conflict of laws rules, *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under New York law the statute of limitations is considered procedural since it goes to the remedy, and New York will apply its own statute of limitations even though the injury which gave rise to the action occurs in another state. *Martin v. Julius Dierck Equipment Co.*, 43 N.Y.2d 583, 588, 403 N.Y.S.2d 185, 187, 374 N.E.2d 97, 99 (1978). Consequently, in determining whether the claims in this action were time barred, the court below was required to determine and apply the proper New York statutes as they have been authoritatively construed by the New York courts. *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

Although this suit was commenced in New York within New York's three-year period of limitation for causes of action seeking damages for personal injuries, New York's limitations of actions laws are supplemented by a borrowing statute which provides that an action cannot be maintained if it is barred by the statute of limitations of the state "where the cause of

action accrued." N.Y.C.P.L.R. § 202.[3] Since the plaintiffs in this action are non-residents of New York, the borrowing statute will apply if (1) the cause of action accrued outside of New York and (2) the limitations period of the jurisdiction in which the cause of action accrued would bar the action. The court below, therefore, was required to consider this borrowing statute to determine if the New York Court of Appeals would apply it to bar this lawsuit.

■ The federal courts, when applying state law in their exercise of diversity jurisdiction, sit as another court of the state. *Guaranty Trust Co. v. York*, 326 U.S. at 108, 65 S.Ct. at 1469. This does not mean, however, that the federal courts must rigidly or mechanically follow every state court pronouncement. *Strubbe v. Sonnenschein*, 299 F.2d 185, 188–89 (2d Cir. 1962). A federal court must, when presented with an absence of controlling state authority, "make an estimate of what the state's highest court would rule to be its law." *Bailey Employment System, Inc. v. Hahn*, 655 F.2d 473, 477 (2d Cir. 1981). (quoting *Cunningham v. The Equitable Life Assurance Society of the United States*, 652 F.2d 306, 308 (2d Cir. 1981)). The Supreme Court has recognized that the federal courts must on occasion play this role:

> One of the difficulties, of course, resulting from *Erie R. Co. v. Tompkins*, is that it is not always easy and sometimes difficult to ascertain what the governing state law is. The essence of the doctrine of that case is that the difficulties of ascertaining state law are fraught with less mischief than disregard of the basic nature of diversity jurisdiction, namely, the enforcement of state-created rights and state policies going to the heart of those rights. . . .

> As long as there is diversity jurisdiction, "estimates" are necessarily often all that federal courts can make in ascertaining what the state court would rule to be its law.

*Bernhardt v. Polygraphic Company of America, Inc.*, 350 U.S. 198, 208–09, 76 S.Ct.

273, 279, 100 L.Ed. 199 (1956) (Frankfurter, J., concurring).

## A. Existing Case Law

Following the analysis of existing federal and New York case law, Judge Mishler defined the issue as how to determine where a cause of action accrues for purposes of applying the borrowing statute. The problem, under this view, is whether to apply the traditional conflicts rule that a cause of action in tort accrues at the place of injury or the modern conflicts approach adopted by the New York Court of Appeals in *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). The *Babcock* approach focuses on which jurisdiction had the most significant interest in, or contact with, the subject matter of the litigation. *Id.*

Judge Mishler was confronted with a split of federal and state authority on this issue. The federal courts have specifically framed the issue as requiring a choice between these two tests. *See Arneil v. Ramsey*, 550 F.2d 774 (2d Cir. 1977); *Gluck v. Amicor, Inc.*, 487 F.Supp. 608 (S.D.N.Y. 1980); *Haberman v. Tobin*, 466 F.Supp. 447 (S.D.N.Y.1979); *Posner v. Merrill Lynch, Pierce, Fenner & Smith*, 469 F.Supp. 972 (S.D.N.Y.1979); *State Teachers Retirement Board v. Fluor Corp.*, 84 F.R.D. 38 (S.D.N.Y. 1979); *Bache Halsey Stuart, Inc. v. Namm*, 446 F.Supp. 692 (S.D.N.Y.1978); *Natural Resources Corp. v. Royal Resources Corp.*, 427 F.Supp. 880 (S.D.N.Y.1977). One group of cases follows *Arneil v. Ramsey*, 550 F.2d 774 (2d Cir. 1977), and *Sack v. Low*, 478 F.2d 360 (2d Cir. 1973), which are read as establishing the rule that the place of injury determines where a cause of action accrues. *E. g.*, *Bache Halsey Stuart, Inc. v. Namm*, 446 F.Supp. at 696. Another set of federal cases holds that the grouping of contacts approach controls the question. *Haberman v. Tobin*, 466 F.Supp. 447 (dictum); *State Teachers Retirement Board v. Fluor Corp.*, 84 F.R.D. 38 (dictum); *Natural Resources Corp. v. Royal Resources Corp.*, 427 F.Supp. 880.

**3.** *See* note 1 *supra*.

The New York cases, however, have not squarely addressed the problem of whether a "place of injury" or a "grouping of contacts" approach should be applied to determine where a cause of action accrues for purposes of the borrowing statute. The question has arisen in a context where the New York courts were primarily concerned with the separate issue of whether, for purposes of the borrowing statute, a breach of warranty claim should be considered to accrue separately from a strict liability claim concerning the same events. *E. g., Martin v. Julius Dierck Equipment Co.*, 384 N.Y. S.2d at 481–82 (2d Dept. 1976). The First Department of the Appellate Division of the New York Supreme Court affirmed a lower court holding that a warranty cause of action accrued in New York, the state where the product was manufactured, while reversing on a related negligence cause of action, holding that it accrued in the state where the injury occurred. *Myers v. Dunlop Tire & Rubber Corp.*, 40 A.D.2d 599, 335 N.Y.S.2d 961, 962 (1st Dept. 1972) (as described in *Martin v. Julius Dierck Equipment Co.*, 384 N.Y.S.2d at 481–82). The Second Department declined to follow *Myers*, holding that a warranty claim should be considered, for purposes of the borrowing statute, to be equivalent to the strict liability claim and to accrue at the same time and place. *Martin v. Julius Dierck Equipment Co.*, 384 N.Y.S.2d at 482. The Second Department then applied a "grouping of contacts" approach to determine where the action accrued:

[A] court should first ascertain the underlying nature of plaintiff's action and then decide which area or locality has the primary interest in the matters in dispute. To put it succinctly, the test requires us to determine what the essence of the action is and which jurisdiction has the most significant contacts with the issues

before the court (cf. *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279; *Auten v. Auten*, 308 N.Y. 155, 124 N.E.2d 99).

*Martin v. Julius Dierck Equipment Co.*, 384 N.Y.S.2d at 482.

The New York Court of Appeals affirmed the Second Department's decision in *Martin* but addressed only the question of whether the warranty action should be considered to accrue separately from the strict liability and negligence causes of action. *Martin v. Julius Dierck Equipment Co.*, 403 N.Y.S.2d at 188, 374 N.E.2d 97. The Court of Appeals did not discuss the Appellate Division's second holding that the grouping of contacts test determined where the action accrued.[4] None of these New York cases analyze in any depth the question of whether "place of injury" or a "grouping of contacts" should determine where a cause of action accrues for purposes of applying the borrowing statute. The *Myers* court simply assumed that the place of injury governed, *Myers*, 335 N.Y.S.2d at 962, and the Appellate Division's opinion in *Martin* only stated its conclusion that a "grouping of contacts" approach was appropriate without explaining its rationale. *Martin*, 384 N.Y.S.2d at 482.

The district court below concluded that since the New York intermediate courts were divided on the question and the New York Court of Appeals had avoided ruling on it when directly presented with an opportunity, it was most appropriate for a federal court applying New York law in its diversity jurisdiction to take a conservative position and apply the traditional place of injury test. Judge Mishler relied upon this court's decision in *Arneil v. Ramsey*, 550 F.2d 774 (2d Cir. 1977), stressing that its rationale was based upon the underlying policy of the borrowing statute "to protect

---

4. The opinion of the New York Court of Appeals in *Martin* is ambiguous on the question of the appropriate standard for determining where a cause of action accrues under the borrowing statute. *Martin v. Julius Dierck Equipment Co.*, 43 N.Y.2d 583, 403 N.Y.S.2d 185, 374 N.E.2d 97. The court appears to approve the Second Department's "greatest interest in the litigation" test, *id.* at 187, 374 N.E.2d 97, but at other places in the opinion describes the test as the "place of injury," *id.* at 189, 374 N.E.2d 97. The court was not overly concerned with the issue in *Martin* because the same result would have been achieved under either standard. *Martin v. Julius Dierck Equipment Co.*, 384 N.Y.S.2d at 482 (2d Dept. 1976).

New York resident-defendants from suits in New York that would be barred by shorter statutes of limitations in other states where non-resident-plaintiffs could have brought suit." *Id.* at 779–80 (quoting *Sack v. Low,* 478 F.2d at 367).

### B. The Meaning of "Cause of Action" in the Borrowing Statute

Judge Mishler's conclusion that the reasoning of *Arneil v. Ramsey* should be followed was sound as far as it went. Unfortunately, perhaps because the issue was not stressed in the court below, the significance of the specific facts presented by the case at bar were not considered. The result of holding that Pennsylvania's limitations period applies under the borrowing statute is to bar the appellants' action against Eastco despite the fact that all the parties concede that Eastco has never had sufficient contact with Pennsylvania to permit it to be sued in that state.

This case presents an issue, therefore, that was not directly addressed by the court below and has not been definitively resolved by the New York Court of Appeals. The question is not simply *where* the cause of action accrued for purposes of New York's borrowing statute but *whether* a cause of action accrued in Pennsylvania for purposes of applying New York's borrowing statute. "A 'cause of action' may mean one thing for one purpose and something different for another." *United States v. Memphis Cotton Oil Co.,* 288 U.S. 62, 67–68, 53 S.Ct. 278, 280, 77 L.Ed. 619 (1933). We must consider whether a New York court would hold that a cause of action accrues (for purposes of applying its borrowing statute) in a jurisdiction which could not exercise jurisdiction over it.[5]

The New York courts have not given this question much attention. The cases have generally assumed that the foreign jurisdiction in which "the cause of action accrued" was able to entertain the cause of action. *See, e. g., Cellura v. Cellura,* 24 A.D.2d 59, 263 N.Y.S.2d 843 (4th Dept. 1965); *Daigle v. Leavitt,* 54 Misc.2d 651, 283 N.Y.S.2d 328 (Sup.Ct., Rockland Co. 1967).[6] There is some language in the opinion of the New York Court of Appeals in the *Martin* case which could be read to indicate that it is not relevant whether personal jurisdiction over the defendants is available in the state whose limitations period is applied under the borrowing statute.[7] *Martin v. Julius*

---

**5.** It should be noted that a cause of action may be considered as "accruing," for purposes of New York's borrowing statute, in a state different from the one whose substantive law would determine liability. *George v. Douglas Aircraft Co., Inc.,* 332 F.2d 73, 78 (2d Cir. 1964). *Accord, Arneil v. Ramsey,* 550 F.2d at 779.

**6.** *Myers v. Dunlop Tire & Rubber Corp.,* 40 A.D.2d 599, 335 N.Y.S.2d 961 (1st Dept. 1972), applied the limitations period of a state arguably unable to exercise jurisdiction over the cause of action. In *Myers* a New York manufacturer was sued on a theory of negligence for damages arising out of an accident occurring in Kentucky. The Appellate Division of New York's Supreme Court applied Kentucky's statute of limitations under New York's borrowing statute because it concluded that the cause of action accrued in Kentucky, the place where the injury occurred. The court did not analyze the issue nor discuss the question of whether Kentucky could have asserted jurisdiction over the defendant.

**7.** The New York Court of Appeals stated:
    The question remains, however, whether Virginia's Statute of Limitations was tolled because of the inability of plaintiff to secure jurisdiction over defendants in Virginia. In this regard, we find it unnecessary to decide whether defendants engaged in a "persistent course of conduct" or derived "substantial revenue from goods used or consumed or services rendered in [Virginia]", thus rendering themselves amenable to jurisdiction under Virginia's longarm statute. (Va.Code [1950], § 8–81.2.) Section 8–33 of the Virginia Code, the tolling provision applicable in the present case, provided for the tolling of the Statute of Limitations during the absence of a defendant from Virginia only if the defendant had resided in Virginia before the cause of action accrued against him. Since defendants were not residents of Virginia before plaintiff's cause of action accrued against them, Virginia's two year Statute of Limitations could not have been tolled. Not having been residents prior to the accrual of plaintiff's causes of action, defendants' absence from Virginia is irrelevant.
*Martin v. Julius Dierck Equipment Co.,* 403 N.Y.S.2d at 190, 374 N.E.2d 97 (footnote omitted).

*Dierck Equipment Co.*, 403 N.Y.S.2d at 190, 374 N.E.2d 97. The court's statements, however, were made in the context of a discussion regarding whether the foreign jurisdiction's tolling statute prevented the limitations period from running. The court was not squarely addressing the question of what effect a possible lack of jurisdiction over the defendant would have on the question of whether a cause of action accrued for purposes of applying the borrowing statute. At another place in the same opinion the New York Court of Appeals uses language which strongly suggests that were it considering this question it would hold that an action cannot accrue unless personal jurisdiction over the defendant is obtainable:

> When it [the borrowing statute, CPLR 202] speaks of "accrual" of a cause of action, it must logically refer to a cause of action upon which a lawsuit may be brought....

*Id.* 403 N.Y.S.2d at 189, 374 N.E.2d 97. Although the immediate occasion of the reference was to the time when a cause of action began, the statement reflects the New York court's perceptive awareness that application of New York's borrowing statute depends upon the presence of its key ingredient, "a cause of action upon which a lawsuit may be brought." *Id.*

■ We are not bound by any decisive construction of the state court on this point. New York's highest court has not definitively spoken on the issue of whether a cause of action can accrue for borrowing purposes in a jurisdiction where the defendant is not amenable to suit. In attempting to estimate what the New York Court of Appeals would hold were it directly confronted with this issue, a federal court must keep in mind the basic purpose of its diversity jurisdiction, *i.e.* "the enforcement of state-created rights and state *policies* going to the heart of those rights." *Bernhardt v. Polygraphic Company of America, Inc.*, 350 U.S. at 208, 76 S.Ct. at 279 (Frankfurter, J., concurring) (emphasis added). The generally recognized purpose of borrowing statutes is to prevent forum shopping by plaintiffs who may be barred by the limitations peri-

od of one possible forum but not that of another. David H. Vernon, "Statutes of Limitations In the Conflict of Laws: Borrowing Statutes," 32 Rocky Mtn.L.Rev. 287, 297 (1960). As to the New York statute, in reasoned dictum we have recognized that its purpose is:

> to protect New York resident-defendants from suits in New York that would be barred by shorter statutes of limitations in other states *where non-resident-plaintiffs could have brought suit.*

*Sack v. Low*, 478 F.2d 360, 367 (2d Cir. 1973) (emphasis added). We reiterated this view in *Arneil v. Ramsey*, 550 F.2d at 779–80, when we emphasized by repeating:

> To the extent New York has a concern in the case before us ... it is in the application of its borrowing statute, and that is
>
>> to protect New York resident-defendants from suits in New York that would be barred by shorter statutes of limitations in other states where non-resident-plaintiffs could have brought suit.

*Sack v. Low,* [478 F.2d] at 367.

*Accord, Daigle v. Leavitt*, 54 Misc.2d 651, 283 N.Y.S.2d 328 (Sup.Ct., Rockland Co. 1967).

■ We believe that New York's borrowing statute would be read as applying only to statutes of limitations of states where "suit could have been brought" in order to effectuate the purpose which the statute was designed to serve. Other courts have also taken this approach and held that for purposes of construing borrowing legislation a claim accrues only where a defendant is amenable to process. *E.g., Pattridge v. Palmer*, 201 Minn. 387, 277 N.W. 18, 19 (1937); *Strong v. Lewis*, 204 Ill. 35, 68 N.E. 556 (1903). As the Supreme Court of Illinois stated:

> The words "when a cause of action has arisen," ... should be construed as meaning when jurisdiction exists in the courts of a state to adjudicate between the parties upon the particular cause of action, without regard to the place where the cause of action had its origin.

*Id.* 68 N.E. at 556. This view recognizes that the existence of jurisdiction over a defendant is essential to assure a rational relationship between the litigation and the statute of limitations being applied. As one commentator has concluded, "[i]f a defendant has never been subject to service in a jurisdiction, it seems unrealistic to permit its law to control the disposition of the limitation question elsewhere." 32 Rocky Mtn.L.Rev. at 326.

The concept that a statute of limitations does not come into operation except against a suit which can be brought is not a late development. Even without a borrowing statute to consider, the same principle has been applied to statutes of limitations. In *Anderson v. Gailey*, 33 F.2d 589 (N.D.Ga. 1929), the court held that where suit is a legal impossibility, statutes of limitations do not come into operation.

> Where suit is a legal impossibility, judicial exceptions to the statute are implied, as where there is no competent plaintiff or defendant or no forum to sue in.

*Id.* at 592. In predicting that the New York Court of Appeals would construe a "cause of action" in its borrowing statute to mean a cause of action where suit could have been brought, we would be heeding the often noted admonition of Judge Learned Hand in *Brooklyn Nat. Corp. v. Commissioner of Internal Revenue*, 157 F.2d 450, 451 (2d Cir.), *cert. denied*, 329 U.S. 733, 67 S.Ct. 96, 91 L.Ed. 634 (1946), that "there is often no surer way to misconceive the meaning of a statute or any other writing than to construe it verbally . . . ." Insofar as the purpose of the borrowing statute is not to protect its residents from stale claims (as to which New York's own statute of limitations affords adequate protection), but to prevent a plaintiff from forum shopping, it makes no sense at all to apply the shorter limitation of a state where the defendant could not have been sued.[8]

This court has, in dicta, implicitly endorsed this view although it has never before been directly confronted with the issue of how a defendant's amenability to suit affects the question of the applicability of New York's borrowing statute. In *Arneil v. Ramsey*, 550 F.2d 774 (2d Cir. 1977), we held, in a securities fraud action, that the statute of limitations of Washington, the state of the plaintiffs' residence, should be applied under New York's borrowing statute. *Id.* at 779. The rationale was that Washington was the state where the economic impact of the fraud was felt, whereas New York's only interest in the case was "in the application of its borrowing statute." Its application raised no problem because "[p]laintiffs here have demonstrated no reason why these defendants could not have been sued in Washington other than that Washington's statute of limitations had already run." *Id.* at 780.

The holding in *Arneil*, therefore, was premised on the ability of the plaintiff to have brought suit in the state whose limitations period was applied. *Id.* We now explicitly affirm what was implicit in our decision in *Arneil* : that our prediction is that New York's Court of Appeals would decide that New York's borrowing statute does not require the application of the statute of limitations of a jurisdiction if the cause of action could never have been brought in that jurisdiction.

It is clear that the policies underlying New York's borrowing statute are not served in any way by applying the limitations period of Pennsylvania to bar a cause of action which never could have been brought in Pennsylvania. The main purpose of the borrowing statute is to prevent forum shopping by plaintiffs. *Arneil v. Ramsey*, 550 F.2d at 779–80; *Daigle v.*

---

8. If the plaintiff had initiated suit in Pennsylvania, his case would never have reached the stage where the defendant would plead Pennsylvania's statute of limitations as a defense. Pennsylvania courts would have no power to exercise any jurisdiction over the defendant. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In such a situation the remedial purpose of the borrowing statute to prevent forum shopping is not served by applying the limitations period of Pennsylvania, a state which never could have entertained the action.

*Leavitt,* 283 N.Y.S.2d at 330. The appellants in this case apparently chose to bring their action in New York, not to avoid the bar of Pennsylvania's shorter limitations period, but because one of the defendants, Eastco, was not amenable to suit in any jurisdiction except New York. In such a case the policies underlying New York's borrowing statute are not implicated and no interest of either New York or Pennsylvania is served by applying the borrowing statute to bar this action. We therefore hold that the New York Court of Appeals would decide that a cause of action cannot accrue for purposes of New York's borrowing statute in a state which could not exercise jurisdiction over the cause of action.

Up to this point we have attempted to avoid confusion by not considering how Pennsylvania's tolling statute would apply to this action were the borrowing statute applicable. We hold simply that since the borrowing statute is inapplicable, Pennsylvania's statute of limitations does not apply at all to the action against Eastco and, therefore, we do not reach the question of whether it would have or should have been tolled under Pennsylvania law.[9]

### C. Conclusion

The foregoing construction of the borrowing statute requires reversal of the summary judgment entered below in favor of Eastco. Eastco's contacts with Pennsylvania are insufficient to provide a basis for personal jurisdiction consistent with the due process clause. *See World-Wide Volks-*

9. Because we hold that New York's borrowing statute does not operate to make Pennsylvania's limitation period applicable to the action against Eastco we need not reach the question of whether Pennsylvania's statute of limitations would be tolled against such a permanently absent defendant. Consideration of this issue, however, illustrates the fact that no coherent purpose is served by applying the borrowing statute to a situation such as is presented by the case at bar.

The tolling statute in effect in Pennsylvania at the time this cause of action came into being has been construed to apply only to a defendant who leaves the jurisdiction after the cause of action has accrued. *Hartmann v. Time, Inc.,* 64 F.Supp. at 675. *See* note 2 *supra.* It does not toll the running of the limitations period against a defendant who has never been present in the state. *Id.*

This construction, based solely on a literal reading of the statute's language, violates Judge Learned Hand's admonition that "interpretation is the art of proliferating a purpose which is meant to cover many occasions so that it shall be best realized upon the occasion in question." *Brooklyn Nat. Corp. v. Commissioner of Internal Revenue,* 157 F.2d at 451. The purpose of tolling a limitations period during a defendant's absence is to save the plaintiff's cause of action where personal service on the defendant cannot be had. *E. g.* 17 A.L.R.2d 502, 504 (1951). In recognition that such tolling statutes are designed to deal with the problem of defendants beyond the reach of a state's process, many courts have construed the term non-resident in such statutes to mean only defendants not amenable to service within the jurisdiction. *E.g.* 55 A.L.R.2d 1158, 1163; *Hunter v. Bremer,* 100 A. at 811–12. The Pennsylvania Supreme Court has acknowledged that this was the purpose of the tolling statute at issue here:

[T]he Act of 1895, supra, contemplates simply a residence of such permanency that the person in question may be found here and served with ordinary legal process at any time. . . .

*Id.* at 812.

The Pennsylvania legislature has recently acknowledged that a defendant's presence in the state at the time an action accrues is not relevant to the purposes of such a tolling statute. It has replaced this archaic statute with a modern one which tolls the running of the limitations period against any defendant who is absent from the jurisdiction and not amenable to service of process at the time the cause of action accrues regardless of whether he had ever been present in the state prior to that time. Act of July 9, 1976, P.L. 586, No. 142, § 2, eff. June 27, 1978, 42 Pa.Stat.Ann. §§ 5532(a), 5532(b)(3).

If we combine Pennsylvania's outmoded tolling statute with a holding that New York's borrowing statute requires the application of Pennsylvania law despite the fact that the defendant has never been amenable to suit in Pennsylvania, we confront an anomalous result. Although Pennsylvania has in effect said that as to this defendant the plaintiff must go elsewhere to preserve his cause of action, we would nevertheless be holding that New York law requires us to apply Pennsylvania's statute of limitations. This circular result, which makes no sense and serves no coherent purpose, thus strengthens our conclusion that New York's borrowing statute would be construed to bar plaintiffs from suit in its courts by shorter statutes of limitation of other states only if the defendants could have been sued there.

*wagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Since there is nothing in this record to show that the action against Eastco accrued for purposes of New York's borrowing statute anywhere other than New York, the borrowing statute is inapplicable and the action against Eastco is governed by New York's three-year limitations period. The summary judgment in favor of Eastco is, therefore, reversed, as the complaint against it was timely since it was filed within New York's three-year statute of limitations governing injury to persons or property. *See* N.Y. C.P.L.R. § 214(4), (5).

The summary judgment in favor of International Harvester, on the other hand, presents another question. International Harvester is and always has been amenable to suit in Pennsylvania as a foreign corporation registered to do business in that state. There is no reason, therefore, not to apply the borrowing statute to the action against International Harvester. In so holding we follow the general rule, recognized in our opinion in *Arneil v. Ramsey,* that the place of injury determines where the cause of action accrues.

Since International Harvester concedes that it has always been subject to jurisdiction in Pennsylvania as a foreign corporation registered to do business in that state and, therefore, has never become a non-resident for purposes of applying its tolling statute,[10] Pennsylvania's statute of limitations would not be tolled and would bar the appellants' cause of action against International Harvester. The order of the district court granting summary judgment against the plaintiffs and in favor of International Harvester is, therefore, affirmed.[11]

Affirmed in part and reversed in part.

10. *See* page 145 *supra.*

11. We do not consider whether Eastco would have a third party claim against International Harvester for indemnification or contribution.