In re JOINT EASTERN AND SOUTH-
ERN DISTRICT ASBESTOS
LITIGATION.

This Document Relates To Lyon
(CV–87–5277) (SDNY) (MJL).

No. CV–87–5277.

United States District Court,
E.D. New York,
and
S.D. New York.

Sept. 22, 1988.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

Defendants in this asbestos-related personal injury and wrongful death case move for summary judgment based on New York's borrowing statute. Because that statute applies only to causes of action that "accrue without the state" and because defendants have not established this to be the case here as a matter of law, the motions are denied.

The facts are in large part undisputed. Plaintiff and her decedent resided in New York from 1962 to 1975, during which time deceased husband worked as an insulator with asbestos products. Plaintiff testified in her deposition, "He [decedent] would get winded, dizzy, coughing. I would hear a wheezing, you know.... I think I noticed it early in the '70's." In 1975, plaintiff and her husband moved to Arizona, and in that and other states her husband continued to be exposed to asbestos. In 1979, he was diagnosed in Arizona as having lung cancer and died in 1981. This action would be time-barred under Arizona's statute of limitations, but, unless subject to the borrowing statute, it is timely under New York's revival statute, L.1986 Ch. 682 § 4, *reprinted in* 1 McKinney's Session Laws of New York 1567 (1986).

Because jurisdiction is based on diversity of citizenship, we apply New York law, including New York conflict-of-laws rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*

313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under New York conflict rules, New York applies its own statutes of limitations to lawsuits brought within the state regardless of the location of the facts that gave rise to the lawsuit. *Martin v. Julius Dierck Equipment Co.*, 43 N.Y.2d 583, 403 N.Y.S.2d 185, 374 N.E.2d 97 (1978).

The feature of New York's statutes of limitations with which we are concerned here is the so-called borrowing statute, which provides:

> "An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply."

NYCPLR § 202 (McKinney 1972 & Supp. 1988). In other words, an Arizona resident, like plaintiff, will be subject to the Arizona statute of limitations if her cause of action accrued outside of New York and if defendants were subject to personal jurisdiction at the time. *Stafford v. International Harvester Co.*, 668 F.2d 142 (2d Cir.1981).

The meaning of "accrued" as used in the borrowing statute differs from its meaning in the context of statutes of limitation generally.[1] For several years, the term has been the subject of considerable conflict-of-laws litigation in New York State and federal courts: should "accrual" be determined according to the traditional "place of injury" test or according to the modern "grouping of contacts" test?

The New York Court of Appeals has not ruled on this question and, indeed, has declined to express its opinion on the issue when presented with an opportunity. *Martin v. Julius Dierck Equipment Co., supra.* Absent such controlling authority, we are required to "estimate" what the New York Court of Appeals would do.

*Bernhardt v. Polygraphic Co. of America, Inc.*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956).

■ I conclude that the traditional rule applies. The borrowing statute has remained relatively untouched by the conflict-of-laws reform of *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963), and its progeny. Only one appellate division case has applied the so-called "modern" method to the borrowing statute, *Martin v. Julius Dierck Equipment Co.*, 52 A.D.2d 463, 384 N.Y.S.2d 479 (2d Dep't 1976); yet, the New York Court of Appeals, affirming the case on other grounds, explicitly refrained from endorsing the appellate division's method. *Martin, supra*, 43 N.Y.2d 583, 403 N.Y.S.2d 185, 374 N.E.2d 97.

On the other hand, endorsing the traditional rule in this context are another appellate division case, *Myers v. Dunlop Tire & Rubber Corp.*, 40 A.D.2d 599, 335 N.Y.S.2d 961 (1st Dep't 1972), and a preponderance of the federal authority. *See, e.g., Sack v. Low*, 478 F.2d 360 (2d Cir.1973); *Arneil v. Ramsey*, 550 F.2d 774 (2d Cir. 1977); *Bache Halsey Stuart, Inc. v. Namm*, 446 F.Supp. 692 (S.D.N.Y.1978); *Stafford v. International Harvester Co., supra*, 668 F.2d at 150.

In addition to a simple weighing of authorities, the Second Circuit Court of Appeals has noted with approval Judge Mishler's thought that,

> "... since the New York intermediate courts were divided on the question and the New York Court of Appeals has avoided ruling on it when directly presented with an opportunity, it was most appropriate for a federal court applying New York law in its diversity jurisdiction to take a conservative position and apply the traditional place of injury test."

*Stafford, supra*, 668 F.2d at 149. Also in favor of the traditional rule, another Second Circuit panel has noted:

---

**1.** Both New York and Arizona measure accrual in this general sense from the time when plaintiff discovered or reasonably should have discovered his injury. NYCPLR § 214–c(2) (McKinney Supp.1988); *Burns v. Jaquays Mining Corp.*, 752 P.2d 28, 31 (Ariz.Ct.App.1987).

"Nor are we persuaded by arguments characterizing the 'place of injury' rule as 'mechanical.' The New York courts themselves recognized that the scope of *Babcock* is not unlimited.

'What the *Babcock* case ... taught and what modern day commentators largely agree is that *lex loci delictus* is unsoundly applied if it is done indiscriminately and without exception. It is still true, however, that *lex loci delictus* is the normal rule.' "

*Arneil, supra,* 550 F.2d at 780, *quoting Neumeier v. Kuehner,* 31 N.Y.2d 121, 131, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972).

Applying the traditional rule, the "place of injury" is "the state where the last event necessary to make an actor liable for an alleged tort takes place." *Conklin v. Canadian–Colonial Airways, Inc.,* 266 N.Y. 244, 248, 194 N.E. 692 (1935); Restatement (First) of Conflict of Laws § 377.

■ It seems clear that, where slowly developing personal injury claims such as this one are concerned, this "last event" is the fact of plaintiff's becoming ill. It is becoming ill that supplies the final element of a negligence or strict liability action and entitles plaintiff to sue. The "last event" is not necessarily plaintiff's discovery of his illness; so to hold would be to confuse the beginning of plaintiff's cause of action with the beginning of its end, i.e., with the starting of the statute of limitations. In support of looking to the time and place of illness rather than to discovery, Comments 1 and 2 to § 377 of the Restatement (First) of Conflict of Laws, explains the "last event" as follows:

"1. Except in the case of harm from poison, when a person sustains bodily harm, the place of 'wrong is the place where the harmful force takes effect upon the body.

"2. Where a person causes another voluntarily to take a deleterious substance which takes effect within the body, the place of wrong is where the deleterious substance takes effect and not where it is administered."

The illness/discovery distinction comports with the common sense and of the plain meaning of the phrase in question: "place of injury."

■ That this distinction is not explored in the cases is understandable, since there was no point to making such a distinction until New York's 1986 switch to a discovery-based statute of limitations. NYCPLR § 214–c. Formerly, when the statute was based on exposure, the time and place of the wrong always coincided with the start of the statute of limitations. *See, e.g., In re Agent Orange Product Liability Litigation,* 597 F.Supp. 740, 802–03 (1984) ("for borrowing statute purposes ... a cause of action based on injuries due to exposure to a deleterious substance accrues when the substance is last inhaled, ingested or injected"), *citing Steinhardt v. Johns–Manville,* 54 N.Y.2d 1008, 446 N.Y. S.2d 244, 430 N.E.2d 1297 (1981). But, now that the statute of limitations is discovery based, the difference between the events is apparent. I conclude that, when the legislature changed the time within which New Yorkers must sue, it did not address a different matter: the meaning of the conflict-of-laws phrases "last event" and "place of injury."

■ Applying this reading of the traditional rules first to the personal injury claim before us, summary judgment must be denied. Decedent Lyon worked as an insulator in New York for some thirteen years, and plaintiff testified that decedent had a tendency to cough and get easily winded in the "early '70's" (while he still lived in New York). In the face of facts such as these, I cannot conclude as a matter of law that decedent became ill after he left New York.

The same analysis governs the wrongful death claim under the traditional rules. "The law of the place where the wrong causing death occurred governs the right of action for death." *Baldwin v. Powell,* 294 N.Y. 130, 132, 61 N.E.2d 412 (1945), *quoting* Restatement (First) of Conflict of Laws § 391. *See also* Comment b to § 391: "It is in the law of the place of wrong (see § 377), and not that of the place where the defendant's conduct occurs or the place of death, which governs the

right." Here, too, summary judgment must be denied because the facts present a triable issue as to where the underlying injury occurred.

The traditional rule is often criticized for tending to highlight fortuitous circumstances, but that is not the case here. Plaintiff was exposed to asbestos in New York for thirteen years; it is his having moved away from New York that is fortuitous, and it would be inappropriate for the case to turn on that fact. Indeed, on a more general level, on issues such as the borrowing statute that concern the initial propriety of bringing suit, the place-of-injury rule avoids creating a trap for the unwary. It protects the as-yet unadvised plaintiff's common-sense notion that he can sue under the law of the place he was injured.

Because plaintiff's causes of action did not as a matter of law "accrue without the state," the borrowing statute is not yet applicable, if at all. Accordingly, I do not reach the issue of whether defendants were subject to personal jurisdiction in Arizona.

For the reasons stated above, defendants' motions for summary judgment are denied.

SO ORDERED.