**GORDON & CO., Plaintiff,**

v.

**Arthur H. ROSS, Defendant.**

**No. 87 CIV. 7105(MGC).**

United States District Court,
S.D. New York.

Sept. 3, 1999.

Steven L. Herrick, Mineola, NY, for Plaintiff.

Serchuk & Zelermyer, LLP, White Plains, NY, by Benjamin Zelermyer, for Defendant.

## OPINION

CEDARBAUM, District Judge.

Gordon & Co. ("Gordon") sues Arthur H. Ross, the former Chief Executive Officer of Hanover Square Securities Group, Inc. ("Hanover Square"), for allegedly fraudulent representations that led Gordon to make two loans to Hanover Square.

Gordon's amended complaint was dismissed by then Magistrate Judge Gershon, based on a grant of partial summary judgment and a verdict following a bench trial. The Second Circuit vacated the judgment and remanded the case, holding that the magistrate judge did not follow established principles of New York law with respect to fraud and misapplied the test of reliance. Ross now moves to amend his answer to assert a statute of limitations defense based on New York's borrowing statute and, on that ground, seeks summary judgment dismissing the amended complaint.

## UNDISPUTED FACTS

The following facts are undisputed except where otherwise noted.

Gordon, a broker-dealer, is a Massachusetts limited partnership, whose sole office is in Newton, Massachusetts. (Def. & Pl. 56.1 Stmt. ¶ 1). All of Gordon's partners are residents of Massachusetts. (*Id.* ¶ 2).

Ross was the CEO of Hanover Square, a New York broker-dealer, at all times relevant to this suit. (*Id.* ¶ 4). He was a New York resident at all relevant times. (*Id.* ¶ 5).

Gordon maintained a margin account with Hanover Square. (*Id.* ¶ 6). On October 17, 1983, Gordon alleges that the New York Stock Exchange informed Hanover Square's principals that their brokerage business would be closed on Friday, October 21, unless they raised substantial capital, stopped hypothecating fully-paid securities, and corrected shoddy bookkeeping practices. On October 21, 1983, Gordon's CEO, Michael B. Salke, heard a rumor that Hanover Square was having financial problems and allegedly requested that Hanover Square transfer to Gordon the full available cash balance in its margin account. He was told that Hanover Square could not comply with this request. (Salke Aff. ¶ 3).

Salke traveled to New York to meet with Hanover Square representatives over the weekend of October 22–23, 1983. (Salke Aff. ¶ 4). Gordon agreed to advance $1,950,000 to Hanover Square by increasing the debit balance (the amount Gordon owed to Hanover Square) in its margin account by that amount. (Def. & Pl. 56.1 Stmt. ¶ 8).

Gordon claims that it was induced to make loans to Hanover Square by allegedly fraudulent representations made by Ross and others that Gordon's securities in

Hanover Square had not been pledged by Hanover Square to secure loans for more than the amount owed by Gordon to Hanover Square. Gordon also claims that Ross and others represented that if Hanover Square opened for business on Monday, October 24, it would deliver Gordon's securities to Gordon's account at Bear Stearns upon payment of the debit balance. (Def. & Pl. 56.1 Stmt. ¶ 9).

Although Hanover Square did open for business on October 24, it did not deliver any of Gordon's securities until October 26 and did not complete deliveries until November 7, when Gordon (through Bear Stearns) advanced additional money to two banks holding the remainder of Gordon's securities hypothecated by Hanover Square. (Pl. & Def. 56.1 Stmt. ¶ 10).

Gordon knew that Ross's representations were false no later than November 7, 1983. (*Id.* ¶ 11).

Gordon commenced this action in New York State Supreme Court on approximately August 31, 1987, and the action was subsequently removed to the Southern District of New York.

## DISCUSSION

"[P]laintiff concedes the procedural point that the defendant may amend his answer to assert the limitations defense." (Pl. Memo. of Law 1 n. 1). Accordingly, the only issue on these motions is whether summary judgment should be granted in favor of defendant on timeliness grounds.

A motion for summary judgment is granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### A. Place Where Cause of Action Accrued

The New York statute of limitations for fraud is six years, C.P.L.R. § 213[8] (McKinney 1990), while the Massachusetts statute of limitations is three years, Mass. Gen. Laws Ann. ch. 260, § 2A (West 1998). Ross argues that the Massachusetts statute of limitations applies because the cause of action accrued in Massachusetts for purposes of the New York borrowing statute.

■ In a diversity case, a federal court must look to the law of the forum state to determine which statute of limitations applies. *Stafford v. International Harvester Co.,* 668 F.2d 142, 147 (2d Cir.1981). New York law includes a "borrowing" statute, C.P.L.R. § 202 (McKinney 1990), which states:

"An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply."

If Gordon's fraud claims "accrued" in Massachusetts, the New York borrowing statute would apply since the claims would have accrued "without the state," and the plaintiff is not a New York resident. In such a case, under the New York borrowing statute, the shorter statute of limitations governs. Since Gordon brought suit more than three years after it discovered the allegedly fraudulent representations, Massachusetts's shorter three-year statute of limitations would bar the present action absent any tolling.

Ross argues that for purposes of applying New York's borrowing statute, fraud claims accrue where the economic impact of the loss is felt, and that the economic impact of the loss is felt where the plaintiff resides. Under Ross's theory, Gordon's claims accrued in Massachusetts, since

that is the state in which all the partners of Gordon reside.

Ross states that he did not assert this defense initially because, for purposes of the New York borrowing statute, the Second Circuit had ruled that a cause of action could not accrue in a state that could not exercise jurisdiction over the defendant. *Stafford v. International Harvester Co.*, 668 F.2d 142 (2d Cir.1981). This holding was consistent with the supposed purpose of the borrowing statute: to prevent forum-shopping by a plaintiff who may be barred by the limitations period of one forum but not another. *Id.* at 152; *see also Arneil v. Ramsey*, 550 F.2d 774, 779–80 (2d Cir.1977); *Antone v. General Motors Corp.*, 64 N.Y.2d 20, 27–28, 484 N.Y.S.2d 514, 473 N.E.2d 742 (1984). "Since Ross is and was a New York resident, and did not appear to have sufficient contacts with ... Massachusetts to subject him to jurisdiction in that state, he did not plead the statute of limitations as a defense because to do so would have been futile" under *Stafford.* (Zelermyer (Def.) Aff. ¶ 19).

In *Insurance Co. of North America v. ABB Power Generation, Inc.*, 91 N.Y.2d 180, 668 N.Y.S.2d 143, 690 N.E.2d 1249 (1997), the New York Court of Appeals held that *Stafford* misconstrued the borrowing statute and that an available out-of-state forum is not necessary. With this ruling, the borrowing statute acquired greater reach, and Ross asserted the limitations defense.

■ For purposes of the New York borrowing statute, a cause of action accrues where the injury is sustained rather than where the defendant committed the wrongful acts. *Global Financial Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 693 N.Y.S.2d 479, 715 N.E.2d 482 (1999) (to be published at 93 N.Y.2d 525, 693 N.Y.S.2d 479, 715 N.E.2d 482); *Sack v. Low*, 478 F.2d 360, 365–67 (2d Cir.1973).

■ When an injury is purely economic, the place of injury for purposes of the borrowing statute is where the economic impact of defendant's conduct is felt, which is usually the plaintiff's place of residence. *Global*, 93 N.Y.2d 525, 693 N.Y.S.2d 479, 715 N.E.2d 482; *Gorlin v. Bond Richman & Co.*, 706 F.Supp. 236, 240 (S.D.N.Y. 1989); *Appel v. Kidder, Peabody & Co.*, 628 F.Supp. 153, 156 (S.D.N.Y.1986). In this case, all of Gordon's partners are Massachusetts residents.

■ Nevertheless, Gordon contends that the place of injury is New York. In *Sack*, Judge Friendly stated that if an out-of-state plaintiff maintained an open account at a New York brokerage firm, and a loss was reflected in this account, it "might make some difference" in determining the place of injury and hence accrual. 478 F.2d at 367–68. Gordon might argue that because the loans were made to Hanover Square by increasing its debit accounts in New York, the loss was suffered in New York.

This argument, however, is not persuasive. In securities fraud cases in which the plaintiff investor ordinarily has maintained an account at defendant brokerage and the loss is reflected in that account, courts have regularly held that the place of accrual for borrowing statute purposes is where the plaintiff resides. *See, e.g., Gorlin, supra; Appel, supra; Klock v. Lehman Bros., Kuhn Loeb Inc.*, 584 F.Supp. 210 (S.D.N.Y.1984). Moreover, the New York Court of Appeals recently reiterated the general applicability of the residence standard and also stated that that standard is consistent with the purpose of the borrowing statute. In explaining why the state with the greatest contacts is not the place of accrual for purposes of the borrowing statute, the court stated: "[A]s we underscored in *ABB Power*, 'CPLR 202 is designed to add clarity to the law and to provide the certainty of uniform application to litigants.' This goal is better served by a rule requiring the single determination of a plaintiff's residence than by a rule dependent on a litany of events relevant to the 'center of gravity' of a

contract dispute." *Global,* 93 N.Y.2d 525, 693 N.Y.S.2d 479, 715 N.E.2d 482. Finally, even if it can be said that the cause of action accrued in both New York and Massachusetts, the borrowing statute still applies, and the Massachusetts statute would bar the action. *Sack,* 478 F.2d at 368.

Gordon's contention that Ross relies predominantly upon inapplicable securities fraud cases is without merit. Gordon does not show that securities fraud cases are governed by different rules from other fraud cases and does not articulate any reason for such purported difference in this context.

## B. Tolling

■ In borrowing a foreign statute of limitations, New York courts must apply all extensions and tolls applicable in the foreign state. *Childs v. Brandon,* 60 N.Y.2d 927, 471 N.Y.S.2d 40, 459 N.E.2d 149 (1983); *Smith Barney, Harris Upham & Co. v. Luckie,* 85 N.Y.2d 193, 207, 623 N.Y.S.2d 800, 647 N.E.2d 1308 (1995). Under the borrowing statute, " 'the entire foreign statute of limitations applies, and not merely its period.' " *Smith Barney,* 85 N.Y.2d at 207, 623 N.Y.S.2d 800, 647 N.E.2d 1308 (quoting McLaughlin, Practice Commentaries, McKinney's Cons. Laws of N.Y., Book 7B, CPLR C202:3, at 109).

■ The Massachusetts tolling provision, Mass. Gen. Laws Ann. ch. 260, § 9 (West 1998) ("Nonresident defendant; suspension of limitation"), provides:

"If, when a cause of action hereinbefore mentioned accrues against a person, he resides outside of the commonwealth, the action may be commenced within the time herein limited after he comes into the commonwealth; and if, after a cause of action has accrued, the person against whom it has accrued resides out of the commonwealth, the time of such residence shall be excluded in determining the time limited for the commencement of the action; but no action shall be brought by any person upon a cause of

action which was barred by the laws of any state or country while he resided therein."

The purpose of the tolling provision is to prevent a potential defendant from insulating himself from liability by placing himself beyond the reach of service until the statute of limitations has expired. *Walsh v. Ogorzalek,* 372 Mass. 271, 274, 361 N.E.2d 1247, 1250 (1977).

■ The Massachusetts tolling provision has been construed narrowly to apply only to "a person who by reason of nonresidence is beyond the jurisdiction and process of the court." *Ogorzalek,* 372 Mass. at 274, 361 N.E.2d 1247; *see also Doyle v. Shubs,* 717 F.Supp. 946, 950 (D.Mass.1989), *aff'd,* 905 F.2d 1 (1st Cir.1990). "[W]hen service may be obtained on a nonresident, the tolling provisions of G.L. c. 260, § 9, are inapplicable." *Woodcock v. American Inv. Co.,* 376 Mass. 169, 176 n. 8, 380 N.E.2d 624, 628 n. 8 (1978).

Massachusetts courts now have greater reach as a result of the state's long-arm statute, Mass. Gen. Laws Ann. ch. 223A, § 3 (West 1998). The importance of the tolling provision has accordingly shrunk. Nevertheless, if a potential defendant is not subject to jurisdiction in Massachusetts, the statute of limitations is tolled.

■ In this case, neither party argues that a Massachusetts court would have personal jurisdiction over Ross by virtue of the long-arm statute, and Ross—who would be protected from suit if the Massachusetts statute were not tolled—justifies his long delay in asserting a statute of limitations defense on the ground that he is not subject to jurisdiction in Massachusetts. Indeed, there has been no showing that the Massachusetts long-arm statute reaches Ross's misrepresentation in New York. *See* Mass. Gen. Laws Ann. ch. 223A, § 3 (West 1998).

Since Ross is not amenable to suit in Massachusetts, the Massachusetts limitations period, applicable by virtue of the

borrowing statute, is tolled, and the shorter New York limitations period governs. Since the six-year New York statute of limitations had not run by the time Gordon commenced this action, the action is not time-barred.

Ross argues that applying the foreign tolling provision is inconsistent with the policy articulated by the New York Court of Appeals in *Insurance Co. of North America v. ABB Power Generation*, 91 N.Y.2d 180, 668 N.Y.S.2d 143, 690 N.E.2d 1249 (1997). Answering a certified question from the Second Circuit, the Court of Appeals held that when a cause of action accrues in a foreign state in favor of an out-of-state resident, the foreign state's limitation period is borrowed pursuant to C.P.L.R. § 202 even if jurisdiction is unobtainable over the defendant in that state. In so holding, the court first relied on the plain meaning of C.P.L.R. § 202. It held that the Second Circuit, in *Stafford*, had erred in construing the phrase "cause of action accruing without the state" as meaning "cause of action accruing and subject to suit without the state." 91 N.Y.2d at 186, 668 N.Y.S.2d 143, 690 N.E.2d 1249. The court further stated that the Second Circuit's reading of the statute would lead to uncertain and inconsistent results, because that reading requires a factual determination whether each defendant is amenable to suit in the foreign state. "As part of this State's procedural code, CPLR 202 is designed to add clarity to the law and to provide the certainty of uniform application to litigants." *Id.* at 187, 668 N.Y.S.2d 143, 690 N.E.2d 1249.

There is some tension between the *ABB Power* decision and importing a tolling provision such as the one at issue in this case. To determine whether the Massachusetts statute is tolled, it is necessary to determine whether the Massachusetts courts can exercise jurisdiction over the defendant. This is the same inquiry that the Court of Appeals held in *ABB Power* was not necessary and was overly cumbersome.

The issues in the two situations, though, are different. In *ABB Power*, the question resolved by the New York Court of Appeals was whether the language "cause of action accrues" in state X means that a cause of action could have been brought in state X. The issue in this case is whether the language "time limited by the laws of" state X requires that the tolling provisions of state X should be applied, even where state X has a tolling provision that depends on its ability to exercise jurisdiction over a potential defendant. New York courts have consistently held that the borrowing statute requires that tolls be borrowed with the period, including tolls for absence from the jurisdiction. *See Childs v. Brandon*, 60 N.Y.2d 927, 471 N.Y.S.2d 40, 459 N.E.2d 149 (1983). It would be improper for a federal court to read *ABB Power* as *sub silentio* overruling this clear line of New York authority.

Ross also contends that applying the tolling provision will often defeat the borrowing statute, since the law of many states tolls the statute of limitations if the defendant is not subject to suit in the state at the time or after the cause of action accrues. Ross points to no applicable authority in support of this argument, which, whatever persuasive force it may have, is not consistent with the New York Court of Appeals' construction of C.P.L.R. § 202.

## CONCLUSION

For the foregoing reasons, defendant's motion is denied.

SO ORDERED.