Anthony CUCCOLO and Michelle Cuccolo, Plaintiffs,

v.

LIPSKY, GOODKIN & CO., a general partnership, Robbins, Greene, Horowitz & Co., a general partnership, Rochlin, Greenblatt & Gallo, a general partnership, Alan Greenblatt, individually, Robert Rochlin, individually, and Mark Lipsky, individually, Defendants.

No. 92 Civ. 2716(CES).

United States District Court,
S.D. New York.

July 13, 1993.

Pollack & Greene by Michael E. Greene, Carl M. Kuntz, New York City, for plaintiffs.

· Wilson, Elser, Moskowitz, Edelman & Dicker by Jonathan C. Thau, Michael L. Schwartzberg, Fred N. Knopf, New York City, for defendants Greenblatt & Rochlin.

McDonough, Marcus, Cohn & Tretter by Diane K. Kanca, New York City, for defendants Lipsky, Goodkin and Lipsky.

## MEMORANDUM DECISION

STEWART, District Judge:

Defendants Lipsky, Goodkin & Co. ("LGC"), Mark Lipsky, Alan Greenblatt and Robert Rochlin move, pursuant to Federal Rules of Civil Procedure ("Fed.R.Civ.P.") 12(b) and 9(b), to dismiss the amended complaint of plaintiffs Anthony and Michelle Cuccolo. As set forth below, the motion is converted to one for summary judgment pursuant to Fed.R.Civ.P. 56 and is denied in part and granted in part.

## BACKGROUND

In 1975, the Cuccolos retained the accounting firm that eventually became defendant LGC, with whom defendants Lipsky, Greenblatt and Rochlin were affiliated. Am.

1. The Cuccolos allege that Lipsky was involved in the 1982 transaction and that Rochlin was "responsible for approving all decisions made by Greenblatt" in connection with their account.

Compl. ¶ 10. LGC provided accounting services and tax planning advice to the Cuccolos and to Tobron Office Furniture, Inc. ("Tobron"), a company owned by Anthony Cuccolo.

In 1988, Greenblatt and Rochlin joined a new firm, defendant Robbins, Greene, Horowitz & Co. ("RGHC"); three years later they started defendant Rochlin, Greenblatt & Gallo ("RGG"). Am.Compl. ¶¶ 59, 61. As Greenblatt and Rochlin changed their firm affiliations, the Cuccolo and Tobron accounts did so as well. Am.Compl. ¶ 62. RGG performed accounting and tax services for the Cuccolos and Tobron until June, 1991. *Id.* Neither RGHC nor RGG have been served with process in this action.

The Cuccolos allege that in 1982 and 1984 Greenblatt recommended certain investments to reduce their income tax exposure.[1] Am. Compl. ¶¶ 13, 37. Pursuant to these recommendations, in 1982 the Cuccolos purchased limited partnership interests in Transpac Oil Drilling Limited Partnership 1982–16 ("Transpac Partnership") for an aggregate purchase price of $126,000.00. Am.Compl. ¶¶ 15, 36. Two years later, the Cuccolos purchased limited partnership interests in Taylor Residential Real Estate Limited Partnership ("Taylor Residential") for $378,591.00, including interest. Am.Compl. ¶¶ 38, 56. Greenblatt allegedly told the Cuccolos that he had investigated both investments and had determined that they were legitimate and would withstand scrutiny by the Internal Revenue Service ("IRS"). Am. Compl. ¶¶ 14, 38. The Cuccolos also maintain that they were never advised about the economic and tax risks of these investments. Am.Compl. ¶¶ 15, 39.

Because of numerous improprieties, neither the Transpac Partnership nor the Taylor Residential investments performed as the Cuccolos anticipated. The offering materials of both investments contained misstatements and omissions. Am.Compl. ¶¶ 27, 28, 41. In addition, both ventures were controlled by

Cuccolo Aff. ¶¶ 2, 5. Rochlin does not directly dispute this point, but does claim that he personally has never had any business communication with the Cuccolos. Rochlin Aff. ¶ 3.

John Galanis, who had a history of improper business practices. Am.Compl. ¶¶ 26, 28, 42. Indeed, Galanis and others were convicted of conspiracy and of operating a racketeering enterprise in connection with these two investments. *See United States v. Galanis,* 87–851 (S.D.N.Y.).

Sometime before 1991, the IRS challenged the Transpac Partnership and Taylor Residential investments, and concluded that they were not legitimate tax shelters. Consequently, the investments did not provide the tax benefits that the Cuccolos had expected. Instead, the plaintiffs have paid tax deficiencies and penalties of approximately $500,-000.00, and anticipate having to pay an additional $500,000.00. Am.Compl. ¶ 68; Cuccolo Aff. ¶¶ 18–20, Exs. C, E, F.

The Cuccolos claim they were unaware of the improprieties involving their investments until March of 1991, when they received notices of personal tax liability from the IRS and the state of New Jersey. Cuccolo Aff. ¶¶ 13, 16. However, they acknowledge that prior to that time they received notices from the IRS and correspondence from lawyers concerning the Transpac Partnership and Taylor Residential investments. Am.Compl. ¶ 63; Cuccolo Aff. ¶¶ 8, 10. The Cuccolos claim they never read any of this information, but instead promptly turned it over to the defendants. *Id.* They also claim they executed certain documents pursuant to the advice of the defendants. Cuccolo Aff. ¶ 11. Finally, the Cuccolos maintain that they asked if there was any action they should take, and that the defendants—and Greenblatt in particular—"repeatedly assured [us] that these matters were being handled so as to insure that [our] substantial interests were protected." Cuccolo Aff. ¶ 12.

Greenblatt contests the Cuccolos' claim that they were not fully informed about the situation involving these investments until March of 1991. Specifically, Greenblatt points out that in 1986 Anthony Cuccolo executed an agreement that retained counsel in connection with the Taylor Residential investment. Greenblatt Aff. ¶¶ 9, 11, Exs. A, C. Similarly, the Cuccolos apparently retained counsel in connection with the Trans-

pac Partnership investment. Greenblatt Aff. ¶¶ 18–19, Exs. H–J.

The Cuccolos' amended complaint contains three causes of action. The first two relate to the investments in Transpac Partnership and Taylor Residential. The first cause of action alleges that the defendants committed accountant malpractice. Am.Compl. ¶¶ 71–81. The second alleges that the defendants committed common law fraud and deceit and also violated certain federal securities statutes. Am.Compl. ¶¶ 82–93.

The third cause of action alleges that from 1986 to 1990 the defendants committed accountant malpractice in preparing the Cuccolos' tax returns. Specifically, the defendants included "Tobron's total ordinary earnings as dividends on plaintiffs' New Jersey income tax returns" instead of reporting only the actual dividends they received. Am.Compl. ¶¶ 98, 102. The defendants also improperly computed the Cuccolos' New Jersey tax credits for taxes paid to New York State. *Id.* As a result, the Cuccolos will incur tax deficiencies and penalties with their New Jersey income taxes. Am.Compl. ¶ 105. In April, 1992, the Cuccolos commenced the instant action in the Supreme Court of New York State, New York County. Since the Cuccolos are residents of New Jersey and the defendants are all residents of New York, the case was removed to this Court. Jurisdiction is based on 28 U.S.C. § 1332.

## DISCUSSION

### I. Fed.R.Civ.P. 12(b)(6) and 56.

■ Defendants LGC, Lipsky, Greenblatt and Rochlin move to dismiss the plaintiffs' amended complaint, presumably pursuant to Fed.R.Civ.P. 12(b)(6). When determining the sufficiency of a claim under this rule, courts shall consider only those "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. Westpoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991) (citing *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991)).

■ When evidence outside the pleadings are submitted with a motion to dismiss, the

court "may exclude the additional material and decide the motion on the complaint alone." *Kopec v. Coughlin,* 922 F.2d 152, 154 (2d Cir.1991) (quoting *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988)). Alternatively, the court may consider the materials outside the pleadings. In that case, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b).

In the instant case, the plaintiffs submitted the affidavit of Anthony Cuccolo with their opposition papers, and defendants Greenblatt and Rochlin submitted affidavits with their reply papers. Thereafter, neither party contacted the Court to request leave to submit sur-reply papers. Since the parties had ample opportunity to respond to their adversaries submissions, the Court treats this motion as one for summary judgment governed by Fed.R.Civ.P. 56.

██ Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.,* 964 F.2d 106, 110 (2d Cir.1992) (citing *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir. 1991)). The court is not to resolve disputed issues of fact when determining a summary judgment motion. Rather, the court is to determine whether factual disputes exist that are both genuine and material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). *See also Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

II. The Statute of Limitations Defense.

██ Defendants argue that plaintiffs' first two causes of action are barred by the statute of limitations. When diversity of citizenship is the basis of jurisdiction, a federal court must look to the statute of limitations of the state in which it sits. *Popkin v. Nat'l Benefit Life Ins. Co.,* 711 F.Supp. 1194, 1197 n. 1 (S.D.N.Y.1989) (citations omitted). Generally, the New York borrowing statute, N.Y.Civ.Prac.L. & R. 202 (McKinney 1990), requires that a nonresident plaintiff's claim that accrued [2] outside of the state must be timely under the statute of limitations of both New York and the state where the claim accrued. If necessary, the tolling provisions of each state's statute of limitations must also be examined.[3] *Childs v. Brandon,* 60 N.Y.2d 927, 929, 471 N.Y.S.2d 40, 41, 459 N.E.2d 149, 150 (1983).

██ Although their claims accrued in New Jersey, plaintiffs argue that only the New York statute of limitations should be considered. Plaintiffs contend that the defendants are not amenable to the jurisdiction of the New Jersey courts, and thus that

**2.** For purposes of N.Y.Civ.Prac.L. & R. 202, "a cause of action accrues where the injury is sustained." *Gorlin v. Bond Richman & Co.,* 706 F.Supp. 236, 240 (S.D.N.Y.1989) (citing *Armstrong v. McAlpin,* 699 F.2d 79, 89 (2d Cir.1983)). An economic injury generally occurs in the state where plaintiff resides. *Id.* Consequently, since plaintiffs reside in New Jersey, their causes of action that allege economic injury accrued in that state.

A cause of action accrues when the wrongful acts or omissions occur. At that point, the statute of limitation starts to run. *Shochat v. Weisz,* 757 F.Supp. 189, 195 (E.D.N.Y.1991). *See also Stevens v. Equidyne Extractive Indus. 1980,* 694 F.Supp. 1057, 1068 (S.D.N.Y.1988). Thus, in the instant case plaintiffs' causes of action concerning the 1982 investment accrued at the latest in December of 1982. For the 1984 investment, accrual occurred at the latest in December of 1984.

**3.** The burden of proving that a particular statute of limitation has expired falls on the defendant. *Romano v. Romano,* 19 N.Y.2d 444, 447, 280 N.Y.S.2d 570, 573, 227 N.E.2d 389, 391 (1967). However, the plaintiff bears the burden of proving that a particular statute of limitation has been tolled. *Doyon v. Bascom,* 38 A.D.2d 645, 646, 326 N.Y.S.2d 896, 898 (3rd Dep't 1971). Finally, when another state's statute of limitation is considered pursuant to N.Y.Civ.Prac.L. & R. 202, the party seeking to benefit therefrom bears the burden of proof. *Katz v. Goodyear Tire & Rubber Co.,* 737 F.2d 238, 243 (2d Cir.1984).

state's statute of limitations should not be considered. The defendants do not contest this argument. Moreover, there is no evidence in the papers submitted to the Court indicating that defendants would be amenable to jurisdiction in New Jersey. Plaintiffs' argument is based on *Stafford v. Int'l Harvester Co.,* 668 F.2d 142, 152 (2d Cir.1981), which held that New York's borrowing statute does not require consideration of the limitations period of another jurisdiction if the plaintiff's cause of action could not have been brought there.[4] The Court of Appeals explained: "Insofar as the purpose of the borrowing statute is ... to prevent a plaintiff from forum shopping, it makes no sense at all to apply [a statute of] limitation of a state where the defendant could not have been sued." *Id.* Although *Stafford*'s reasoning has been questioned by Judge McLaughlin, *see* Practice Commentaries to N.Y.Civ. Prac.L. & R. 202 (1990), this Court is bound by the Second Circuit's holding. Since plaintiffs' argument was not contested and no evidence indicated the defendants—who bore the burden of proof—would be amenable to a New Jersey court's jurisdiction, only the New York statute of limitations will be considered. *Cf. Maiden v. Biehl,* 582 F.Supp. 1209, 1215 (S.D.N.Y.1984) (defendants proffered evidence indicating they would be amenable to foreign court's jurisdiction).

A. The Accountant Malpractice Cause of Action Relating to the Transpac Partnership and Taylor Residential Investments.

■ Defendants contend that New York's three year statute of limitations should be applied to plaintiffs' first cause of action alleging accountant malpractice. Defendants' contention is incorrect. The New York Court of Appeals recently reiterated that "the appropriate statute of limitations to be applied in actions for professional malpractice (other than medical, dental or podiatric) ... 'is properly related to the remedy rather that the theory of liability.'" *Santulli v. Englert, Reilly & McHugh,* 78 N.Y.2d 700,

707, 579 N.Y.S.2d 324, 327, 586 N.E.2d 1014, 1017 (1992) (quoting *Sears, Roebuck & Co. v. Enco Assocs., Inc.,* 43 N.Y.2d 389, 394–95, 401 N.Y.S.2d 767, 372 N.E.2d 555 (1977)). *See also Spingold Foundation v. Wallin, Simon, Black & Co.,* 184 A.D.2d 464, 585 N.Y.S.2d 416, 417 (1st Dep't 1992) (since action "seeks to recover damages for a pecuniary interest and arises out of a contractual relationship between the parties, the six year statute of limitations applies even though the complaint is phrased in terms of professional malpractice"). Accordingly, to the extent plaintiffs' first cause of action seeks contract remedies, the six year statute of limitations applies. N.Y.Civ.Prac.L. & R. 213(2) (McKinney 1990). Conversely, the three year statute of limitations applies to the extent that the first cause of action seeks tort remedies. N.Y.Civ.Prac.L. & R. 214(6) (McKinney 1990).

■ Whether a three or six year period is applied, the statute of limitations expired well before the plaintiffs filed the instant action. Nonetheless, plaintiffs argue that the continuous representation doctrine tolled the statute of limitations. While initially developed in the medical malpractice area, this doctrine has been extended to other professionals, including accountants. *Hall & Co. v. Steiner & Mondore,* 147 A.D.2d 225, 543 N.Y.S.2d 190, 192 (3rd Dep't 1989). *See also Shochat v. Weisz,* 757 F.Supp. 189, 195 (E.D.N.Y.1991). Continuous representation tolls the statute of limitations until an accountant stops rendering professional services to his or her client on a particular matter. *Muller v. Sturman,* 79 A.D.2d 482, 437 N.Y.S.2d 205, 207–08 (4th Dep't 1981). "The mere recurrence of professional services does not constitute continuous representation where the later services performed were not related to the original service." *Hall & Co.,* 543 N.Y.S.2d at 192. Determining whether a toll applies to a particular cause of action is generally a question of fact. *McDermott v. Torre,* 56 N.Y.2d 399, 406, 452 N.Y.S.2d 351, 354, 437 N.E.2d 1108, 1111 (1982).

---

4. In *Stafford,* the cause of action accrued in Pennsylvania when the tractor truck the plaintiff was driving was involved in an accident. Plaintiff was a New Jersey resident, and one of the defendants was a New York corporation that was not amenable to jurisdiction in Pennsylvania. 668 F.2d at 144 & 152 n. 8.

■ Defendants Greenblatt and Rochlin contend that even though they continued to prepare the plaintiffs' tax returns, they did not provide advice concerning the Transpac Partnership and the Taylor Residential investments for some time. Greenblatt and Rochlin support their contention by pointing out that in 1986 and 1987 the plaintiffs retained counsel in connection with these two investments.

Plaintiffs, on the other hand, allege that the defendants continued to provide advice through 1991 on the two investments. Cuccolo Aff. ¶¶ 8–12. Indeed, the exhibits attached to the Greenblatt affidavit may support the plaintiffs' contention. These exhibits include documents relating to the Cuccolos retention of counsel in connection with these investments. Greenblatt Aff.Exs. A–J. Greenblatt maintains that these documents were only provided to him for the purpose of taking a "legal expenses" tax deduction while preparing the plaintiffs' tax returns. Greenblatt Aff. ¶ 12. Nonetheless, the fact that the defendants had these documents may also indicate that they continued to advise the plaintiffs about these investments. Moreover, simply because the plaintiffs retained counsel to represent their rights against the promoters of the investments does not mean that their accountants of many years were no longer providing any services concerning the same investments.[5] *See Alpert v. Shafer,* 1991 WL 222130, *5, 1991 U.S.Dist.Lexis 15228, *14 (S.D.N.Y. 1991). Accordingly, the Court finds that there is an issue of fact as to whether or not professional services concerning these investments were rendered to the plaintiffs by all four defendants through 1988 and by Greenblatt and Rochlin through 1991. *McDermott,* 452 N.Y.S.2d at 354, 437 N.E.2d at 405.

■ Defendants Greenblatt and Rochlin also argue that the continuous representation toll should not apply to the instant case

because "plaintiffs were well aware of problems with their investments as early as 1986." Reply Mem. Law at 14. To begin with, plaintiffs contend that they were unaware of any problems until 1991. Prior to that time, plaintiffs maintain that they turned over to the defendants any documents concerning the Transpac Partnership and the Taylor Residential investments as they received them. As noted above, Greenblatt and Rochlin had copies of at least some of these documents. Moreover, even presuming that in 1986 plaintiffs were aware of problems with their investments, it does not necessarily follow that at that time they were aware of the alleged malpractice of the defendants.

More importantly, this Court holds that the mere awareness by clients of acts of malpractice by their accountants does not prevent the use of the continuous representation doctrine. Sound policy reasons exist to support this rule. As the New York Court of Appeals noted over thirty years ago in the related medical malpractice area: "It would be absurd to require a wronged patient to interrupt corrective efforts by serving a summons" on his or her physician. *Borgia v. City of New York,* 12 N.Y.2d 151, 156, 237 N.Y.S.2d 319, 321–22, 187 N.E.2d 777, 778 (1962). *See also McDermott,* 452 N.Y.S.2d at 355, 437 N.E.2d at 1111 ("The policy underlying the continuous treatment doctrine seeks to maintain the physician-patient relationship in the belief that the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure. Implicit in the policy is the recognition that the doctor not only is in a position to identify and correct his or her malpractice, but is best placed to do so."); *LaBay v. White Plains Hospital,* 97 A.D.2d 432, 467 N.Y.S.2d 400, 402 (2d Dep't 1983) (fact that plaintiff may have been aware of negligent act on the day she was injured does not

---

**5.** Rochlin and Greenblatt's reliance on *Lazzaro v. Kelly,* 87 A.D.2d 975, 450 N.Y.S.2d 102 (4th Dep't), *aff'd,* 57 N.Y.2d 630, 454 N.Y.S.2d 59, 439 N.E.2d 868 (1982) to support their argument on this point is unpersuasive. In that case, plaintiff had specifically retained—apparently within the statute of limitations—an attorney to commence a malpractice action against the de-

fendant attorney. Once the attorney was retained, the defendant attorney's representation of the plaintiff ended. *Id.* In the instant case, however, plaintiffs retained an attorney to commence an action against the promoters of the investments, not against the accountants who had recommended the investments.

deprive her of continuous treatment doctrine).

The same policy considerations were noted in a case involving continuous representation by an attorney. *See Muller*, 437 N.Y.S.2d at 208 (citations omitted) (continuous representation doctrine in attorney malpractice cases often involve "an attempt by the attorney to rectify an alleged act of malpractice"). These justifications apply to the accountant-client relationship as well: accountants who have had an ongoing relationship with their clients are in the best position to correct their alleged acts of malpractice. Thus, the mere awareness by a client of malpractice committed by his or her accountant will not prevent the use of the continuous representation doctrine. *See also Alpert*, 1991 WL 222130, 1991 U.S.Dist.Lexis 15228 (plaintiffs awareness of IRS investigation does not bar use of continuous representation doctrine in their action against accountants).

In sum, there is an issue of fact as to whether or not plaintiffs can rely on the continuous representation doctrine to toll the statute of limitations in their first cause of action. However, since defendants LGC and Lipsky stopped representing the plaintiffs in 1988, the statute of limitations began to run at that time. Consequently, to the extent plaintiffs seek tort damages, they are barred by the three year statute of limitations. On the other hand, plaintiffs may maintain their first cause of action against LGC and Lipsky to the extent that they seek contract damages. Since Greenblatt and Rochlin continued to represent the defendants until 1991, the plaintiffs may seek both contract and tort damages against these two defendants under the first cause of action.[6]

**B. The Fraud Cause of Action.**

Plaintiffs' second cause of action alleges common law fraud and deceit. Defendants maintain that this cause of action is also barred by the statute of limitations. In New York, a fraud action accrues on the date of the fraudulent act, which in this case was when the plaintiffs purchased their tax shel-

ter investments. *Gould v. Berk & Michaels, P.C.*, 1990 WL 41706, 1990 U.S.Dist.Lexis 3655 (S.D.N.Y.1990). The statute of limitations for actions based on fraud is six years, N.Y.Civ.Prac.L. & R. 213(8) (McKinney 1990 & Supp.1993), or within two years of the date that the plaintiff could reasonably have discovered the fraud, whichever is later. N.Y.Civ.Prac.L. & R. 203(g) (McKinney 1990). *See also IIT v. Cornfeld*, 619 F.2d 909, 928–29 (2d Cir.1980); *Lazzaro*, 450 N.Y.S.2d at 104 ("while a fraud action may not be time-barred within six years from commission of the fraud, the time for its commencement may not be extended beyond two years from its discovery where the six-year period has expired").

Applying these statutory periods to plaintiffs' second cause of action, the six year period provided in section 213(8) expired in 1990 at the latest. As to the two year period provided in section 203(g), plaintiffs contend that they did not discover the fraud until sometime in 1991. While plaintiffs admit that prior to this time they received various documents concerning the two investments, they contend that they never examined them but instead forwarded them to the defendants. On the other hand, defendants argue that these documents indicated that plaintiffs could have known about the alleged fraud as early as 1986. Specifically, the plaintiffs acknowledged that they received notices from the IRS concerning these two investments. Cuccolo Aff. ¶ 9. Moreover, in 1986 and in 1987 the plaintiffs retained counsel concerning the Taylor Residential and Transpac Partnership investments respectively.

Defendants correctly argue that *Mirman v. Berk & Michaels, P.C.*, 1992 WL 332238, 1992 U.S.Dist.Lexis 16707 (S.D.N.Y.1992), is directly on point. In that case, the plaintiffs maintained that the defendants, their accountants, failed to disclose material information on investments they had recommended. Plaintiffs argued that the statute of limitations should be tolled since the defendants fraudulently concealed their wrongful conduct. Plaintiffs argument failed, since evi-

---

**6.** The Court will not consider the plaintiffs' equitable estoppel argument because even if they prevailed on this point, the result would be no different than what they accomplished with their continuous representation argument.

dence indicated that they had previously received notice of an IRS investigation concerning the investments. Judge Keenan stated that the knowledge of this IRS investigation "would raise the suspicions of a person of ordinary intelligence and thus give rise to his duty to inquire further." *Id.*, 1992 WL 332238 at *3 at *9. *See also Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir.1983) ("where the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him").

The facts in the instant case are strikingly similar to *Mirman.* Plaintiffs had received notice of an IRS investigation regarding these investments and even retained counsel to represent their interests. Consequently, had the plaintiffs used "reasonable diligence," N.Y.Civ.Prac.L. & R. 203(g), at the time they retained counsel they could have discovered the alleged fraud committed by the defendants. Since plaintiffs retained counsel in connection with their Taylor Residential investment in 1986 and with their Transpac Partnership investment in 1987, their fraud cause of action lapsed no later than 1989. Since plaintiffs failed to commence this action before that time, the Court dismisses the second cause of action.[7]

### III. Failure to Plead Fraud with Particularity.

Since the plaintiffs' second cause of action alleging common law fraud has been dismissed, the Court will not consider the defendants' argument that this claim was also not pleaded with requisite particularity pursuant to Fed.R.Civ.P. 9(b).

### IV. The Accountant Malpractice Action Relating to the Preparation of the 1986, 1987 and 1988 Tax Returns.

The third cause of action alleges that the defendants committed accountant malpractice in the preparation of plaintiffs' 1986, 1987 and 1988 tax returns.[8] Specifically, the defendants included "Tobron's total ordinary earnings as dividends on plaintiffs' New Jersey income tax returns" instead of reporting only the actual dividends received by the plaintiffs. Am.Compl. ¶¶ 98, 102. In addition, the defendants improperly computed the New Jersey tax credits that plaintiffs were entitled to for taxes they had paid to New York State. *Id.* In 1990, the state of New Jersey maintained that the plaintiffs owed $235,163.88 in back taxes and $52,626.46 in penalties for the subject years. Cuccolo Aff.Ex. G. Apparently as a result of "correspondence" between the plaintiffs' new accountants and the state of New Jersey, these figures were adjusted: in 1992 the plaintiffs owed $133,890.05 in back taxes and approximately $34,435.77 in penalties. Cuccolo Aff. ¶ 23, Ex. H. According to Exhibit H, certain penalties would have been waived had payment been made prior to May 15, 1992. *Id.* Plaintiffs also point out that they have been charged approximately $8,000 by their new accountants for services in connection with these tax deficiencies. Cuccolo Aff. ¶ 23.

 Defendants, on the other hand, contend that they took an "aggressive but realistic position" concerning the tax credits.[9] Greenblatt Aff. ¶ 21. In fact, Greenblatt contends that due to this aggressive position, the

---

7. The statute of limitations also bars plaintiffs' second cause of action to the extent that it is based on alleged violations of federal securities laws. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, — U.S. —, —, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991) (claims arising under the federal securities laws "must be commenced within one year after the discovery of the facts constituting the violation and with three years after such violation").

8. While the amended complaint alleged that defendants had also been negligent in preparation of the plaintiffs' 1989 and 1990 tax returns, An-

thony Cuccolo's affidavit only addresses the 1986 to 1988 tax years. Accordingly, the Court will only consider the third cause of action as it relates to those three years.

9. Essentially, New Jersey did not permit resident shareholders of non-New Jersey "S" corporations to take a tax credit for non-resident taxes paid in other states. *Id.* Since Greenblatt—and apparently other accountants as well—considered that New Jersey's interpretation of the tax law was incorrect, he took a tax credit for taxes the plaintiffs paid in New York. *Id.* In 1992, a New Jersey tax court upheld a modified version

Cuccolos have actually saved money since their total bill as of 1992 is less than the back taxes owed as of 1990. Greenblatt Aff. ¶ 23; *compare* Cuccolo Aff.Exs. G and H. Consequently, defendants contend that even presuming they were negligent, the plaintiffs have suffered no damages, and thus cannot maintain this cause of action.[10]

■■ Essentially, defendants argue that since their successors—plaintiffs' new accountants—effectively negotiated with the state of New Jersey that less back taxes and penalties were due, plaintiffs suffered no damages. Such an argument raises several questions which cannot be resolved on the limited record before the Court. For instance, could plaintiffs have attained the same position concerning their tax liability while not accruing any penalties? Since the record is not fully developed, at this time the Court will deny summary judgment on this issue pursuant to Fed.R.Civ.P. 56(f). However, defendants are given leave to refile their motion after the parties have had the opportunity to conduct discovery on this issue. *See, e.g., Rettinger v. American Can Co.,* 574 F.Supp. 306, 312 (M.D.Pa.1983) (plaintiff given opportunity to file affidavit "to clarify if disputed material facts exist").

## CONCLUSION

As set forth above, plaintiffs may maintain their first cause of action against all the defendants except to the extent that this action seeks tort damages from defendants LGC and Lipsky. Plaintiffs' second cause of action is barred by the statute of limitations. Plaintiffs may maintain their third cause of action, but the defendants are given leave to refile their motion after the parties have had the opportunity to conduct discovery.

SO ORDERED.

of this tax law, which permitted those in situations such as the Cuccolo's to take only a partial tax credit. Greenblatt Aff. ¶ 22, Ex. K.

**10.** To recover in a malpractice action, the plaintiff must have suffered actual loss or damages as a result of the defendants negligence. *The Limited v. McCrory Corp.,* 683 F.Supp. 387, 392 (S.D.N.Y.1988) (citing cases). Simply because the extent of damages is not ascertainable at a specific time is not fatal to maintaining an action for malpractice. *Id. See also Contemporary Mission, Inc. v. Famous Music Corp.,* 557 F.2d 918, 926 (2d Cir.1977) (so long as there are damages, recovery is permissible even if amount is uncertain).