Fremont-Smith, J.
This action alleges that plaintiffs own accountants, defendant Deliotte & Touche, LLP (Deliotte), provided deficient audits to the company in 1991 and 1992 which resulted in plaintiffs bankruptcy. Defendant has moved to dismiss the complaint on statute of limitations and other grounds. For the reasons stated below, defendant’s motion is denied.
BACKGROUND
Plaintiff Cambridge Biotech Corporation contracted with defendant Deloitte & Touche for independent auditor services for fiscal years 1991 and 1992. Defendant conducted the audits and rendered a “Report of Independent Accounts’’ (“Report") for each year, which plaintiff included in its Form 10-K and filed with the United States Securities ánd Exchange Commission (“SEC”). The 1991 Report was dated March 6, 1992 and the 1992 Report was dated March 19, 1993. Each year plaintiff filed the 10-K forms, with the Report, with the SEC by March 31 of the same year.
On March 19, 1996, plaintiff filed this complaint alleging that defendant failed to conduct its audit in accordance with Generally Accepted Auditing Standards (GAAS) and Generally Accepted Accounting Principles (GAAP), resulting in revenue overstatement for 1991 and 1992. Plaintiffs complaint alleges negligence (Count I) and breach of contract (Count II) for *368 each of the reports. Plaintiff claims damages due to loss of credibility and reputation, resulting in harm to its business which forced it to file for bankruptcy.
Defendant moves to dismiss the complaint on several grounds. First, defendant claims that with respect to the 1992 audit plaintiffs claims are barred by the applicable three year statute of limitations under G.L.c. 260, §4, for actions of tort or contract for malpractice. Defendant further argues that because plaintiffs counsel did not apply for nor receive permission from the Bankruptcy Court to represent plaintiff in this action pursuant to 11 U.S.C. §327(a), the complaintwas a “nullity” even with respect to the 1992 audit, so that any claims in that regard are now time barred as well.
Defendant further contends that, even if not time barred, plaintiffs negligence claim fails to state a claim and that the contract count also fails to state a claim and is, in any event, duplicative of plaintiffs malpractice cause of action, which sounds in tort. Defendant also argues that plaintiffs participation in defendant’s alleged fraud bars it from pursuing this action, and, finally, that plaintiffs complaint should be dismissed because there is a prior pending claim by the company’s stockholders, who are the “real party in interest,” involving the same facts and issues.[1]
For the reasons stated below, the motion to dismiss is denied.
DISCUSSION
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept as true the well pleaded factual allegations of the complaint, as well as any inference which can be drawn therefrom in the plaintiffs favor. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991) and cases cited.
I. Timeliness of Plaintiffs Action 1.Timeliness of Plaintiffs Claims Arising from the 1991 Report
On their face, plaintiffs claims arising from the 1991 Report, filed in March of 1992, appear to be time-barred.[2] However, plaintiff argues that the three year statute of limitations for malpractice actions, G.L.c. 260, §4, was tolled pursuant to the continuous representation doctrine.
The continuing representation doctrine arose in the context of medical malpractice and has since been expanded to other professions, including attorneys and, in two jurisdictions, accountants. Cuccolo v. Lipsky, Goodkin & Co., 826 F.Supp. 763, 768 (S.D.N.Y. 1993). The essence of the doctrine is that “when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint, the accrual comes only at the end of the treatment . . . The continuous treatment we mean, however, is treatment for the same or related illnesses or injuries, continuing after the alleged acts or malpractice, not mere continuity of a general physician-patient relationship.” F.D.I.C. v. Deloitte & Touche, 834 F.Supp. 1129, 1148-49 (E.D.Ark. 1992) (citing Borgia v. New York, 12 N.Y.2d 151 (1962)).
As with medical and legal professionals, "[cjontinuous representation tolls the statute of limitations until an accountant stops rendering professional services to his or her client on a particular matter ... The mere recurrence of professional services does not constitute continuous representation where the later services performed were not related to the original service.” Cuccolo, at 768. Allegations of annual audits, without reference to the same or related problems for which “treatment” was sought, will not support application of the continuous representation doctrine: “[if the doctrine applied in such a case,] it almost certainly would apply in every case involving an accountant that had performed audits for a client in consecutive years. That result is unacceptable, nor is it called for by the doctrine described in Borgia." F.D.I.C., at 1149.
The Supreme Judicial Court has expanded the doctrine of continuous representation to the legal malpractice field, Murphy v. Smith, 411 Mass. 133, 137 (1991), but it has not yet applied it to accountants.
It is true that applying the doctrine in a case where nothing more than consecutive annual audits were involved would mean that any and all yearly audits would amount to continuous treatment, rendering the three year statute of limitations of Chapter 260, §4, virtually meaningless whenever a defendant accountant had performed consecutive year audits. As the court in F.D.I.C. stated: “[t]he mere possibility of continuous treatment, which can be imagined but which has not been alleged, is not enough. ...” Id., at 1151.
Here, however, the complaint alleges that Deloitte’s audit letter for the 1992 audit stated that
In our opinion, based on our audits and the report of the other auditors, such consolidated financial statements present fairly, in all material respects, the financial position of Cambridge Biotech Corp. and subsidiaries as of December 31, 1991 and 1992, and the results of their operations and their cash flows for each of the three years in the period ended December 31, 1992 in conformity with generally accepted accounting principles.
Accordingly, as the 1992 audit letter itself indicated, a related continuous representation since 1991 was involved, there is a disputed issue of material fact for the jury whether continuous representation can be proved in this case. In these the Appellate Courts of the Commonwealth should be provided with a full record on which to decide whether the doctrine of continuous representation, if found as a factual matter to exist, should be applied to accountants in Massachusetts. Accordingly, the defendant’s motion to dismiss the complaint, insofar as the 1991 audit is concerned, is denied.[3]
*369 2. Effect of Debtor’s Failure to Seek Bankruptcy Court Approval of Counsel
Defendant contends that, even with respect to the 1992 audit, the suit was late-filed because it was not authorized by the bankruptcy court when filed in March 1996.
Pursuant to 11 U.S.C. §327(a) a bankruptcy court must approve the trustee’s employment of professionals to represent or assist in carrying out Chapter 11 duties.[4] The trustee’s application to the court must set out facts enabling the court to make a conflict of interest or adverse interest determination regarding the professional and the estate.[5]
The recognized sanction for non-compliance with Section 327(a) and Rule 2014, however, is not dismissal, but denial of attorneys’ fees. With one exception, all of the cases involving issues of representation without prior bankruptcy court approval have discussed the effect on attorneys’ fees rather than any effect on the validity of the complaint. See, e.g., In Re Atkins, 69 F.3d 970, 973 (9th Cir. 1995) (“[i]n bankruptcy proceedings, professionals who perform services for a debtor in possession cannot recover fees for services rendered to the estate unless those services have been previously authorized by a court order,” citing Section 327(a) and Rule 2014); In Re Kendavis Industries Int., Inc., 91 B.R. 742, 748 (N.D.Tex. 1988) (“where an attorney for a debtor is found to be interested, disallowance of attorney fees is appropriate .. . [i]f an attorney holds an undisclosed adverse interest, a court is empowered to deny all compensation”).
While a bankruptcy, moreover, stays any action against the bankrupt, it does not prohibit a suit by a bankrupt in possession. Thus, in In Re Interwest Business Equipment, Inc., 23 F.3d 311, 318 (10th Cir. 1994), the court held that the Bankruptcy Code and Rules may not limit an attorney’s choice of whom to work for: “(the code and rules] do not provide authority for the court to prohibit a professional from working for any client it chooses. Thus, there can be no question of the court either permitting or prohibiting unapproved representation. Instead, any professional not obtaining approval is simply considered a volunteer if it seeks payment from the estate.” Recently, courts have mitigated even this sanction, allowing retroactive attorneys’ fees for unauthorized services which were later authorized. See, e.g., In Re Atkins, 69 F.3d, at 973 (“bankruptcy courts in this circuit possess the equitable power to approve retroactively a professional’s valuable but unauthorized services”).[6]
The court is aware of only one case wherein a motion to dismiss was filed on the ground of unauthorized bankruptcy representation, and that motion was denied. In In Re Chocklett, 274 F.Supp. 821, 822 (W.D.Va. 1967), the court held that a suit filed by the trustee’s attorney was not subject to dismissal merely because the attorney did not comply with the appointment provision,[7] the court finding that “the appointment of counsel to represent the estate in the absence of a verified petition should not withdraw counsel’s authority to file a valid suit against the petitioner.” Id., at 824, citing Widett v. D’Andria, 241 F.2d 680 (1st Cir. 1957) (where the court had noted that the only cases litigated under Order 44 dealt with attorneys’ fees and that none of them addressed “the question of the authority of counsel to act for a trustee, receiver or debtor in possession when not appointed by the court as the Order requires.” Id., at 682). The court held that the sanction of denial of attorneys fees provided for in the Order was “adequate to effectuate its purpose . . . We see no point in adding lack of authority to file notice of appeal to the sanction stated in the Order.” Id., at 683.[8]
Accordingly, defendant’s argument that this Court should dismiss plaintiffs complaint, even as it relates to the 1992 audit, as a “nullity,” because plaintiffs counsel allegedly did not receive timely court permission, is unavailing.
II. The Negligence Count
Defendant claims that plaintiff fails to state a claim for negligence in that plaintiff fails to specify facts to support the duty, breach, and causation elements of negligence. Defendant also asserts that plaintiffs failure to specify which specific Generally Accepted Auditing Standards (“GAAS”) defendant allegedly violated is grounds for dismissal of plaintiffs complaint. Plaintiff argues that such specificity of pleading is unnecessary, but offers to amend its complaint pursuant to Mass.R.Civ.P. 15(a) if the court finds plaintiff must plead detailed GAAS violations.
In Massachusetts it has been held that a complaint for accountant malpractice must allege “with clarity and certainty specific facts concerning (1) the negligent acts or omissions of the defendants; (2) the content of the auditors’ reports and certificates; (3) the work which the defendants'had agreed to do, had stated that they had done or omitted, and had actually done; (4) the extent to which the defendants’ representations were qualified, contained disclaimers, or were expressed as opinions; (5) the generally accepted principles of accounting which the defendants were alleged to have violated; and (6) the facts misrepresented and what the plaintiffs allege the defendants knew, or (after reasonable investigation) should have known, concerning them.” Blank v. Katz, 350 Mass. 779 (1966). See also 3 Mass. Jur. §30.117, at 101 (1992).
Under this standard, plaintiffs complaint is deficient. Plaintiffs conclusory allegations notwithstanding, plaintiff fails to specify facts concerning defendant’s alleged negligent acts or omissions, specific GAAS violations, and what facts defendant knew or should have known concerning plaintiff.
Although Rule 8(a)’s notice pleading requirements, effective in 1974, after the Blank case, may be argued to have required less in the way of “specific facts" in *370 the complaint than did Blank, that case is still good law and is generally cited as the standard. See, e.g., Massachusetts Jurisprudence and Mottla’s Proof of Cases. Accordingly, defendant’s motion to dismiss the complaint for lack of specificity is allowed, but with leave to amend within thirty days.
III.The Contract Count
Defendant claims that plaintiff fails to state a claim for breach of contract because the complaint does not allege that plaintiff performed its duties under the contract. However, plaintiffs complaint, though not detailed, satisfies the pleading requirements for a breach of contract action. U.S. Funding, Inc. v. Bank of Boston, 28 Mass.App.Ct. 404, 406 (1990) (complaint “does not show beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,” citing Nader v. Citron, 372 Mass. 96, 98 104-05 (1977)).
Defendant also argues that the court should dismiss the contract count because it is duplicative of the tort count, citing cases from other states holding that accountant malpractice actions have their “true basis” in negligence, not contract. For example, in F.D.I.C. v. Clark, 978 F.2d 1541, 1551-52 (10th. Cir. 1992), the court held that the trial court properly treated attorney malpractice claims as “one hybrid tort claim for malpractice [sounding in negligence]” for purposes of Colorado’s proportional liability statute. Similarly, in F.D.I.C. v. Regier Carr & Monroe, 996 F.2d 222, 224 (10 Cir. 1993), the court held that, for statute of limitations purposes, an accountant malpractice action sounded in tort, not contract, where the contract contained nothing beyond the ordinary standard of care applicable to accountants, i.e., GAAP.[9]
The SJC, however, has held that, in the analogous context of legal malpractice, “the plaintiffs complaint need not. . . label the action as an action of contract or as an action of tort . . . Under our traditional practice, a plaintiff may elect to bring either an action of contract or an action of tort in such a case, but he need not choose between the two labels.” Hendrickson v. Sears 365 Mass. 83, 86 (1974). The Court also noted that the traditional view of legal malpractice is that “the gist of the action, regardless of its form, is the attorney’s breach of contract.” Id., at 86. See also Brown v. Gerstein, 17 Mass.App.Ct. 558, 572 (1984) (the attorney client relationship is essentially contractual in nature).
Accordingly, defendant’s motion to dismiss the contract count is denied.
IV.Plaintiffs Participation in Alleged GAAP violations
Defendant further contends, that in view of plaintiffs counsel’s own admission that plaintiff provided defendant with false financial statements (made in his capacity as counsel for the stockholder class in its suit against plaintiff), plaintiffs own wrongdoing is a bar to the suit, citing Cenco, Inc. v. Seidman & Seidman, 686 F.2d 449, 454-456 (7th Cir. 1982) (a “wrongdoing corporation may not sue its independent auditor in negligence or contract for failing to discover and expose the very fraud the corporation itself perpetrated through its preparation of false financial statements”).
However, Cenco did not involve a motion to dismiss, but involved jury instructions advising that “a participant in a fraud cannot also be a victim entitled to recover damages” (holding that such an instruction was “proper in the circumstances”). Id. Similarly here, such facts, if undisputed, or if proven at trial, may constitute a bar for purposes of summary judgment, directed verdict, or jury instructions and a special jury question, but are not germane to a motion to dismiss.
V.Prior Pending New York Class Action
Finally, defendant argues that plaintiffs complaint should be dismissed because there is a pending class action in Federal District Court against defendant concerning the same events alleging violations of federal securities laws. Defendant claims that the stockholder class in that action is the real party in interest here because plaintiff in this action assigned 90% of any recovery in this action to the class. Therefore, claims defendant, since all of the claims asserted in this action could have been filed in district court in New York, this action should be dismissed as a matter of issue preclusion, citing Caspian Investments, Ltd. v. Vicom Holdings, Ltd., 770 F.Supp 880, 884 (S.D.N.Y. 1991).
Here, however, the parties are not the same in the two actions. As stated in Caspianlnvestments, “comity requires that the parties and issues in both cases must be sufficiently similar that doctrine of res judicata would apply.” Id., at 884, citing Herbstein v. Bruetman, 743 F.Supp. 184, 188 (S.D.N.Y. 1990). Nor can there be any res judicata, in any event, until one or another of the actions is litigated to final judgment.
ORDER
For the reasons stated above, defendant’s motion to dismiss is denied, except that plaintiff is ordered to file an amended complaint within thirty days after receipt of this order setting forth with specificity the matters specified in Blank v. Katz, 12, supra.

 Plaintiff assigned 90% of any recovery in this action to a class of its stockholders who are suing defendant in Federal District Court in New York.

 Plaintiffs claims arising from the 1992 audit are not, on their face, time barred as the 1992 audit Report was filed no later than March 31, 1993, whereas plaintiffs complaint was filed on March 19, 1996.

 Amotion to dismiss pursuant to Mass.R,Civ.P. 12(b)(6) is an appropriate vehicle to raise a statute of limitations defense. Epstein v. Seigal, 396 Mass. 278, 279 (1985). And, plaintiff has the burden of proving facts that would take the case outside the impact of the statute of limitations. Franklin v. Albert, 381 Mass. 611, 619 (1980). Here, however, it does not appear beyond doubt that the plaintiff can prove no set of *371 facts in support of his [continuous representation argument] to surmount defendant’s statute of limitations defense. Cf. Nader v. Citron, 372 Mass. 96, 98 (1977).

 Section 327(a) provides, in pertinent part, “the trustee, with the court’s approval, may employ . . . attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustees duties under this title.”

 bankruptcy Rule 2014 provides, in pertinent part, ”[a]n order approving the employment of attorneys . . . pursuant to §327 . . . shall be made only on application of the trustee or committee .. . The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional serviced to be rendered, any proposed arrangement for compensation, and, to the best of the applicant’s knowledge,- all of the person’s connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person’s connections [to the same parties listed above].”

 See also Stephen R. Grensky, The Problem Presented by Professionals Who Fail to Obtain Prior Court Approval of Their Employment or Nunc Pro Tunc Est Bunc, 62 Am.Bankr.L.J. 185 (1988), describing the purpose of Section 327(a) and Rule 2014 as overseeing the employment of professionals to prevent “vounteerism,” and criticizing courts that award fees to unauthorized professionals on equitable grounds.

 The attorney in In Re Chocklett, 274 F.Supp. at 824, was appointed pursuant to General Order in Bankruptcy No. 44, a predecessor to Section 327(a) and Rule 2014, the purpose of which was to “protect the estate by insuring employment of competent counsel who have no adverse interest . . "Id. While counsel did seek and obtain the appointment, he did not submit a verified petition, as required by the Order.

 While General Order 44 explicitly provided that the court may deny attorneys’ fees where appropriate, and Section 327(a) does not, 11 U.S.C. §328(a) provides that the court may modify the terms and conditions of employment, including fees, at the conclusion of employment if “such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.” Therefore, Section 327(a) and Rule 2014, viewed in the context of the overall statutory scheme and purpose, as well as relevant case law, serve the same purpose as General Order 44, i.e., to control the debtor’s employment and compensation of professionals in the interest of the estate. There is nothing to suggest that any broader sanctions are authorized. See also Grensky, supra, n. 4, at 193 (“section 327(a) and B.R. 2014(a) are not significantly different than General Order 44 which they replaced . . .”).

 defendant also points out that the Massachusetts General Court has seen fit to give a contract action for accountant malpractice a three year statute of limitations, G.L.c. 260, §4, the same as for tort actions, G.L.c. 260, §2A.